IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

United States Courts
Southern District of Texas
FILED
JUL 0 8 2005
Michael N. Milby, Clerk

| | |
|---|---|
| WESTCOTT HOLDING, INC., f/k/a ) <br> SPECIALITY PIPING COMPONENTS, ) <br> INC., ) <br> ) <br>     Plaintiff, ) <br> ) <br> v. ) <br> ) <br> MONITOR LIABILITY MANAGERS, ) <br> INC., and CAROLINA CASUALTY ) <br> INSURANCE COMPANY, ) <br> ) <br>     Defendants. ) <br> _____ ) | Civil Action 4:05-01945 |

**DEFENDANTS MONITOR LIABILITY MANAGERS, INC. AND
CAROLINA CASUALTY INSURANCE COMPANY'S
MOTION TO DISMISS PURSUANT TO
FEDERAL RULE OF CIVIL PROCEDURE 12(B)(6) AND BRIEF IN SUPPORT**

                                              Martin S. Schexnayder
                                              State Bar No. 17745610
                                              Federal Bar No. 15146
                                              Delia Reyna
                                              State Bar No. 24037352

                                              **ATTORNEYS-IN-CHARGE
                                              FOR DEFENDANTS**

**OF COUNSEL:**

**WILSON, ELSER, MOSKOWITZ,
  EDELMAN & DICKER, LLP**

James K. Thurston
Anjali C. Das
120 North LaSalle Street
Suite 2600
Chicago, Illinois 60602
Telephone: 312/704-0550
Telecopy: 312/704-0515

26974.1

TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ............................................................................................... ii

I.     NATURE OF THE ACTION ................................................................................1

II.    SUMMARY OF THE ARGUMENT ....................................................................2

III.   STATEMENT OF THE ISSUES...........................................................................3

       1.     Westcott Has Not Pleaded It Has Indemnified
              Its Directors and Officers Which is Fatal to Its Lawsuit ..............................3

       2.     Carolina Has Paid the Amount It Deems "Fair and Proper"
              As Required Under the Policy .....................................................................4

IV.    ARGUMENT..........................................................................................................5

       1.     Westcott Has Not Pleaded It Has Indemnified
              Its Directors and Officers Which is Fatal to Its Lawsuit ..............................5

       2.     Carolina Has Paid the Amount It Deems "Fair and Proper"
              As Required Under the Policy .....................................................................8

       3.     Texas Does Not Recognize "Bad Faith" in
              Third-Party Claims-Handling Context........................................................10

       4.     Wescott Has Failed To Make the Prerequisite Statutory Demand ............11

V.     CONCLUSION.....................................................................................................13

# TABLE OF AUTHORITIES

## FEDERAL CASES

**Page**

*Ford v. Cimarron Insurance Co.*, 230 F.3d 828 (5th Cir. 2000) .......................................... 10

*Keith v. Stoelting*, 915 F.2d 996 (5th Cir. 1990) .................................................................. 12

*Macmillan, Inc. v. Federal Insurance Co.*, 741 F. Supp. 1079 (S.D.N.Y. 1990) ............................................................................................................................ 6, 7

*Travelers Indemnity Co. v. Citgo Petroleum Co.*, 1997 U.S. Dist. LEXIS 24167 (S.D. Tex. 1997) ........................................................................................... 10

## STATE CASES

*Comsys Information Tech. Services, Inc. v. Twin City Fire Insurance Co.*, 130 S.W.3d 181 (Tex. App.—Houston [14th Dist.] 2003, *no pet.*) ............................. 6

*Evergreen National Indemnity Co. v. Tan It All, Inc.*, 111 S.W.3d 669 (Tex. App.—Austin 2003, *pet. denied*) ................................................................. 6

*Farmers & Merchant Bank v. Home Insurance Co.*, 514 So. 2d 825 (Ala. 1987) ............................................................................................................................ 7

*Montrose Chemical Corp. v. Admiral Insurance Co.*, 10 Cal. 4th 645 (Cal. 1995) ........................................................................................................................... 11

*The Universe Life Insurance Co. v. Giles*, 950 S.W.2d 48 (1997) ...................................... 10

*Verisign, Inc. v. Internet Corp.*, 2004 U.S. District LEXIS 17330, 3 .................................. 5

## MISCELLANEOUS

20 Univ. Texas Rev. Litig. 381 at 11 (Spring 2001) ............................................................. 8

23 Corp.Couns.Rev. 65, 69 (May 2004) ............................................................................... 9

Cases Interpreting Section 16(e) ........................................................................................ 12

Federal Rule of Civil Procedure 12(b)(6) ............................................................................ 1

Fed. Prac. and Pro. § 1363 (3d. ed. 2004) (See Ex. 9) ......................................................... 5

Univ. Texas Rev. Litig. at 2 .................................................................................................. 8

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | |
|---|---|
| WESTCOTT HOLDING, INC., f/k/a SPECIALITY PIPING COMPONENTS, INC., <br><br> Plaintiff, <br><br> v. <br><br> MONITOR LIABILITY MANAGERS, INC., and CAROLINA CASUALTY INSURANCE COMPANY, <br><br> Defendants. | Civil Action 4:05-01945 |

**DEFENDANTS MONITOR LIABILITY MANAGERS, INC. AND CAROLINA CASUALTY INSURANCE COMPANY'S MOTION TO DISMISS PURSUANT TO FEDERAL RULE OF CIVIL PROCEDURE 12(B)(6) AND BRIEF IN SUPPORT**

Defendants Monitor Liability Managers, Inc. and Carolina Casualty Insurance Company (hereinafter, collectively "Carolina") hereby bring their Motion to Dismiss pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure against the Complaint filed by Westcott Holding, Inc., f/k/a Speciality Piping Components, Inc. (hereinafter, collectively, "Westcott"), and respectfully state as follows:

### I. NATURE OF THE ACTION

This lawsuit involves a commercial insurance coverage dispute. Westcott filed its lawsuit against Carolina in State Court and Carolina has subsequently removed the case to this Court. Carolina's Original Answer is due today and is filing its Motion to Dismiss pursuant to Rule 12(b)(6) in response to Plaintiff's Original Petition.

1

69862.1

## II. SUMMARY OF THE ARGUMENT

Carolina issued a directors and officers insurance policy to Westcott. Thereafter, Westcott and its directors and officers were sued in two separate lawsuits. One suit was non-suited and dismissed, and the other one settled for $75,000. The total loss (settlement and defense costs) incurred in both lawsuits is $375,000. Of this amount, Carolina has paid $75,000 -- *or its respective allocable share per its obligations under the Policy* (in the event of covered and uncovered claims, the Policy contains an express allocation provision).

Carolina makes this Motion for four independent reasons. First, Westcott has not alleged it has suffered any "Loss" under the Policy. The Policy expressly provides coverage to Westcott: "***only*** to the extent that the Company [Westcott] ***has indemnified*** the Directors and Officers for such Loss as permitted by law." Under Texas law, an insured bears the burden of proving its loss under an insurance policy. Westcott has not pleaded that it "has indemnified" its directors and officers for the Loss associated with the lawsuits and under the relevant case law, its lawsuit must be dismissed in its entirety.

Second, contrary to Westcott's pleaded allegations that Carolina has "refused to pay any of the Costs of Defense", in fact Carolina has made $75,000 in payments -- and precisely in compliance with Carolina's obligations under the Policy. Specifically, the Policy states: "In the event that a determination as to the amount of Costs of Defense to be advanced under this Policy cannot be agreed to, *then the Insurer **shall advance** such Costs of Defense which the Insurer states to be fair and proper until a different amount shall be agreed upon or determined pursuant to the provisions of this Policy and the applicable law.*" And because Carolina has paid *precisely what the Policy mandates it to pay,* Westcott cannot maintain any of its causes of action. At best, Westcott should be

2

69862.1

able to maintain a cause of action for declaratory relief, which is not found in Westcott's Complaint.

Third, Carolina seeks dismissal of Count II (bad faith) because Texas law does not recognize a bad faith cause of action in the third-party insurance context solely with respect to claims handling. Fourth, Carolina also seeks dismissal (or abatement) of Counts III, IV and V (under the Texas Insurance Code) for failure to make a pre-suit demand as required by the Texas Insurance Code.

### III. STATEMENT OF THE ISSUES

Carolina issued a directors and officers policy to Westcott (the "Policy"). (Complaint, ¶5.)(The Policy is attached hereto as Exhibit 1.) Westcott and its directors and officers have been sued in two lawsuits, the Foroni Lawsuit and the Hughes Lawsuit. (Complaint, ¶7, 8.) In these two lawsuits, defense expenses have totaled $300,000 and one lawsuit settled for $75,000 (Complaint, ¶7, 8.)

1. **Westcott Has Not Pleaded It Has Indemnified Its Directors and Officers Which is Fatal to Its Lawsuit**

    With respect to the Foroni and Hughes Lawsuit, the Policy does <u>not</u> provide direct coverage for Westcott's liabilities whether direct, vicarious or otherwise. (Policy, Ex. 1, Insuring Clauses I.A. and B.) The Policy affords coverage to Westcott "<u>only</u> to the extent that the Company [Westcott] has indemnified the Directors or Officers for such Loss as permitted by law." (Policy, Ex. 1, Insuring Clause I.B.2.)[1] Westcott's Complaint has not pleaded it has indemnified its Directors or Officers for the Loss associated with the two lawsuits – and this is fatal to this coverage lawsuit (see "Argument" below).

---

[1] Specifically, Section I.B.2. provides: "This Policy shall pay the Loss of the Company arising from any...Claim first made against the Directors or Officers, during the Policy Period or the Extended Reporting Period (if applicable) for any actual or alleged Wrongful Act, but, in the case of Coverage B.2. above, *only to the extent that the Company has indemnified the Directors or Officers for such Loss as permitted by law.*" (Emphasis added.)

3

69862.1

2.  **Carolina Has Paid the Amount It Deems "Fair and Proper" As Required Under the Policy**

The Foroni Lawsuit and the Hughes Lawsuit named the Insured Westcott and/or its subsidiaries, as well as the directors and officers of these entities. (Exhibits 2 and 3.) The Policy *does not cover the liabilities of Westcott or its subsidiaries for its own liabilities.* (Policy, Insuring Clauses I.A. and B.) Indeed, in situations where a claim involves covered parties (*i.e.,* the directors and officers) and uncovered parties (the Westcott entities), Section VI.D. of the Policy expressly mandates an allocation and addresses precisely how "Loss" (Costs of Defense, settlements and judgments) is to be paid to the Insureds:

> "With respect to Costs of Defense jointly incurred by, any joint settlement made by, and/or any adjudicated judgment of joint and several liability against the Company and any Director or Officer, in connection with any Claim other than a Securities Claim, the Company and the Director(s) or Officer(s) and the Insurer agree to use their best efforts to determine a fair and proper allocation of the amounts as between the Company and the Director(s) or Officer(s) and the Insurer. In determining a fair and proper allocation, the Directors and Officers and the Company expressly acknowledge that the Directors and Officers and the Company each face independent exposure. *In the event that a determination as to the amount of Costs of Defense to be advanced under this Policy cannot be agreed to, then the Insurer shall advance such Costs of Defense which the Insurer states to be fair and proper until a different amount shall be agreed upon or determined pursuant to the provisions of this Policy and applicable law.*" (Policy, Ex. 1, Section VI.D.) (Emphasis added.)

As set forth in the express provisions of the Policy, in the event that a determination as to the amount of Costs of Defense to be advanced under this Policy cannot be agreed to, then "the Insurer **shall advance** such Costs of Defense **which the**

4

69862.1

***Insurer states to be fair and proper*** until a different amount shall be agreed upon or determined pursuant to the provisions of this Policy and applicable law."

Contrary to Westcott's allegation that Carolina "has refused to pay any of the Costs of Defense" (Complaint, ¶7 and 8), by letter dated June 28, 2004, Carolina acknowledged its *previous payment of* $75,000 to cover its allocated portion of the settlement of the Hughes Lawsuit, as well as the amount of Costs of Defense that Carolina believed to be "fair and proper" under the Policy. (The June 28, 2004 letter is attached hereto as Exhibit 4.)²

## IV. ARGUMENT

On a Rule 12(b)(6) motion to dismiss, the Court is to accept all well pleaded facts. However, the district court cannot accept as true pleaded allegations (Carolina "has refused to pay any of the Costs of Defense") that are contradicted by facts that can be judicially noticed or by other allegations or exhibits attached to or incorporated in the pleading. 5C Wright & Miller, Fed. Prac. and Pro. § 1363 (3d. ed. 2004) (See Ex. 9).

---

² In Verisign, Inc. v. Internet Corp., 2004 U.S. District LEXIS 17330, *3, the California District Court, citing three separate U.S. Courts of Appeals decisions, held "'documents whose contents are alleged in a complaint and whose authenticity no party questions, but which are not physically attached to the pleading, may be considered in ruling on a *Rule 12(b)(6)* motion to dismiss' without converting the motion to dismiss into a motion for summary judgment. (Attached as Exhibit 5). Branch, 14 F.3d at 454 (9th Cir. 1994) (citing Romani v. Shearson Lehman Hutton, 929 F.2d 875, 879 n.3 (1st Cir. 1991)). (Attached as Exhibits 6 and 7). If the documents are not physically attached to the complaint, they may be considered if their 'authenticity . . . is not contested' and 'the plaintiff's complaint necessarily relies' on them. Parrino v. FHP, Inc., 146 F.3d 699, 705-06 (9th Cir. 1998). (Attached as Exhibit 8). 'The district court will not accept as true pleading allegations that are contradicted by facts that can be judicially noticed or by other allegations or exhibits attached to or incorporated in the pleading.' 5C Wright & Miller, *Fed. Prac. and Pro.* § 1363 (3d. ed. 2004)." (Attached as Exhibit 9). Here, this letter was sent by Monitor (a defendant) to Westcott's counsel that filed this coverage lawsuit, as such, the "authenticity [can] not [be] contested" and Westcott "complaint necessarily relies" on it as it has (wrongfully) alleged that Carolina has "refused to pay any of the Costs of Defense." ***All citations to articles, treaties and non-Texas cases are separately submitted together with this Motion.***

1. **Westcott Has *Not* Pleaded It Has Indemnified
   Its Directors and Officers Which is Fatal to Its Lawsuit**

The plaintiff in this lawsuit is "Westcott Holdings, Inc. f/k/a Speciality Piping Components, Inc." In any insurance dispute, under Texas law the insured bears the initial burden of proving its loss falls within the insuring agreement of the relevant policy. Comsys Info. Tech. Servs., Inc. v. Twin City Fire Ins. Co., 130 S.W.3d 181, 193 (Tex. App.—Houston [14th Dist.] 2003, no pet.)("in an insurance contract dispute, the initial burden falls upon the insured to establish coverage under the terms of the policy"); Evergreen Nat'l Indem. Co. v. Tan It All, Inc., 111 S.W.3d 669, 675 (Tex. App.—Austin 2003, pet. denied)(same).

Here, the relevant Insuring Agreement only provides coverage to Westcott to the extent it "has indemnified" its directors and officer. Specifically, the Insuring Clause of the Policy expressly provides coverage to Westcott "only to the extent that the Company [Westcott] has indemnified the Directors or Officers for such Loss as permitted by law." (Policy, Ex. 1, Section I.B.2.) ***Westcott has not pleaded in the Complaint that it has indemnified its directors and officers for the Loss incurred – and this is fatal to its coverage lawsuit.***

Macmillan, Inc. v. Federal Insurance Co., 741 F.Supp. 1079 (S.D.N.Y. 1990) is directly on point. (Attached as Exhibit 10). Macmillan involved the interpretation of a D&O policy which is substantively identical to the Carolina's Policy at issue herein, it provided that the D&O insurer was only liable to reimburse "Loss for which the Insured Organization grants indemnification to each Insured Person." Id. at 1082. In defending against a takeover, the directors and officers of the Insured Organization Macmillan, Inc. ("Macmillan") incurred defense fees and costs in excess of $13 million. Id. at 1081.

Macmillan had advanced said fees and costs on behalf of the directors and officers, but never formally granted indemnification of the same. Id. The D&O insurer refused to reimburse Macmillan for said fees and costs and Macmillan brought suit.

The D&O insurer brought a Rule 12(b)(6) motion to dismiss the complaint for failure to state a claim because "the complaint fails to allege that Macmillan granted indemnification to the former directors and officers, as required by the plain language of the Policy." Id. at 1082.

The insured Macmillan argued that as long as it had the power to indemnify its directors and officers, it is entitled to recover under the D&O policy even though it does not formally grant such indemnification. Id.

The New York District Court stated Macmillan's argument "flounders upon the plain language of the Policy, the relevant case law and policy considerations." Id. The court then noted the D&O insurer reimbursement obligations are limited to situations where the Insured Organization "grants indemnification" and held: "The plain meaning of this language is that Macmillan [the Insured Organization] <u>must grant indemnification</u> before Federal [the D&O insurer] has any obligation to pay under that clause of the policy." Id. (A copy of the <u>Macmillan</u> decision is attached hereto.)

<u>See</u> <u>also</u>, <u>Farmers & Merchant Bank v. Home Ins. Co.</u>, 514 So.2d 825, 829 (Ala. 1987)("The second insuring clause very plainly provides primary insurance coverage to the Bank to the extent the Bank has indemnified its officers and directors for covered losses incurred by those officers and directors. We agree with the trial court that the second insuring clause has no application to the instant cases, where there has been no claim of indemnification by the Bank.") (Attached as Exhibit 11).; M. Quinn & A. Levin,

7

"Directors and Officers Liability Insurance: Probable Directions in Texas Law", 20 Univ. Texas Rev. Litig. 381 at *11 (Spring 2001)("It is extremely important for corporations to formally indemnify insured directors and officers. Without this indemnification, the court may deny the corporate insured coverage…formal indemnification is necessary for the corporation to obtain standing" citing, MacMillan, supra.)(hereinafter "Univ. Texas Rev. Litig."). (Attached as Exhibit 12).

And although the MacMillan decision is from the New York District Court, as noted in the Univ. Texas Rev. Litig. commentary: "The Texas Supreme Court has provided guidance on D&O insurance issues by announcing that it is state policy for insurance jurisprudence in Texas to be as consistent as possible with other American states: 'Courts usually strive for uniformity in construing insurance provisions, especially where, as here, the contract provisions at issue are identical across the jurisdictions.' [quoting, National Union v. CBI Industries, Inc., 907 S.W.2d 507, 522 (Tex. 1995).] The reason for this policy is clear. Business is conducted on a national basis and thus business law needs to be relatively uniform." Univ. Texas Rev. Litig. at *2.

Here, Carolina's Policy language is even more precise than the MacMillan policy language as it provides coverage "***only*** to the extent that the Company [Westcott] ***has indemnified*** the Directors or Officers…". (Emphasis added.) Because Westcott has not pleaded it has indemnified its directors and officers for this loss, its lawsuit must be dismissed.

2. **Carolina Has Paid the Amount It Deems "Fair and Proper"
   As Required Under the Policy**

Generally, D&O insurance policies *do not* provide coverage for the liabilities of the corporate entities, whether direct, vicarious or otherwise. Rather, to the extent that

8

69862.1

the insured corporate entity has indemnified its directors and officers for claims made against them, D&O policies reimburse the insured corporation for the same.[3]

In both lawsuits against Westcott, the corporation was named as a defendant as well as its directors and officers. (See, Exs. 2 and 3.) Typically, under a D&O policy, when a lawsuit involves claims that are against both covered parties (against the directors and officers) and uncovered parties (against the corporation), an allocation under the Policy is necessary.

Here, the Carolina Policy expressly provides an allocation is necessary when "Costs of Defense [are] jointly incurred by...the Company and any Director or Officer", Carolina and Westcott "agree to use their best efforts to determine a fair and proper allocation of the amounts as between the Company and the Director(s) or Officer(s) and the Insurer." (Policy, Ex. 1, Section VI.D.) The Policy also expressly provides: "In the event that a determination as to the amount of Costs of Defense to be advanced under this Policy cannot be agreed to, then the Insurer shall advance such Costs of Defense which the Insurer states to be fair and proper until a different amount shall be agreed upon or determined pursuant to the provisions of this Policy and applicable law." Id.

Here, Carolina has done precisely that -- it attempted to reach a resolution with Westcott (see, Ex. 4 and references to prior Carolina letters), but when an agreement

---

[3] See, e.g., A. Chew and C. Cuykendall, "D&O Insurance for In-House Counsel Serving as Corporate Directors and Officers", State Bar of Texas, 23 Corp.Couns.Rev. 65, 69 (May 2004): "Generally, a D&O policy covers: (1) both directors and officers directly for any loss incurred by them in suits by the corporation, stockholder or third parties; and (2) the corporation for any indemnification paid by it to directors and officers. Thus, there are commonly two agreements in a D&O policy: (1) one agreement directly covers the director or officer for his or her loss if the corporation has not already reimbursed or indemnified the individual director or officer; and (2) the other agreement covers the corporation's loss if it has reimbursed or indemnified the individual director or officer...***But, the corporation is itself only insured against indemnifying the director or officer for his or her liability, and is not covered as an insured entity for its own liabilities or defense costs.***" (Emphasis added). (Attached as Exhibit 13).

9

69862.1

could not be reached, Carolina "advance[d] such Costs of Defense which the Insurer states to be fair and proper." Consequently, Carolina's adherence to the Policy terms must necessarily immunize it from all of Westcott's causes of action. Indeed, Westcott's Complaint does not allege Carolina failed to use its "best efforts" to determine an allocation. At best, Westcott should only be able to maintain a cause of action for declaratory relief, which is not contained in its Complaint.

3. **Texas Does Not Recognize "Bad Faith" in Third-Party Claims-Handling Context**

In Count II, Westcott alleges a cause of action for bad faith based on "a duty of good faith and fair dealing", and alleges Carolina breached said duty "by denying and/or delaying payment when liability was reasonably clear." (Complaint, ¶9.)

As stated by Judge Harmon of the District Court for the Southern District of Texas "the Texas Supreme Court has held that Texas law does not recognize a breach-of-good-faith-duty claim in third-party insurance cases, but instead allows only a negligence claim under Stowers." Travelers Indemnity Co. v. Citgo Petroleum Co., 1997 U.S. Dist. LEXIS 24167, *6, n. 5 (S.D. Tex. 1997). (Attached as Exhibit 14). And as noted by the Fifth Circuit: "Texas courts have recognized only one tort duty regarding third party insurance cases, that being the duty stated in Stowers Furniture Co. v. American Indem. Co., 15 S.W.2d 544 (Tex. Comm'n App. 1929, holding approved). According to this duty, an insurer may be held liable in damages upon refusing an offer of settlement when it appears that an ordinary prudent person in the insured's situation would have settled." Ford v. Cimarron Insurance Co., 230 F.3d 828, 831 (5th Cir. 2000).[4]

---

[4] The Texas Supreme Court has stated a cause of action for bad faith is only recognized in the first-party insurance context. The Universe Life Ins. Co. v. Giles, 950 S.W.2d 48, 53 n.2 (1997)("We have recognized the bad-faith tort only in the first-party context. A first-party claim is one in which an insured

10

D&O policies -- like Carolina's Policy -- are "third-party" liability policies, and not "first-party" insurance. See, e.g., Montrose Chemical Corp. v. Admiral Ins. Co., 10 Cal.4th 645 (Cal. 1995).[5] (Attached as Exhibit 15). Accordingly, Westcott's claims against Carolina for bad faith and breach of the duty of good faith and fair dealing must be dismissed.

4.   **Westcott Has Failed To Make the Prerequisite Statutory Demand**

Counts III, IV, and V of Westcott's Complaint are for violations of the Texas Insurance Code.[6] However, Article 21.21, Section 16(e) of the Texas Insurance Code specifically mandates notice shall be given before suit is brought -- something which Westcott has failed to do, nor has it pleaded the same:

> "***As a prerequisite to filing a suit seeking damages under this section*** against any person, the person seeking damages shall give written notice to the other person at least 60 days before filing suit. The notice must advise the person of the specific complaint and the amount of actual damages and expenses, including any attorneys' fees reasonably incurred in asserting the claim against the defendant." (Emphasis added.)

---

seeks recovery for the insured's own loss...We recently declined to extend the bad-faith cause of action to the third-party context, in which an insured seeks coverage for injuries to a third party. Maryland Ins. Co. v. Head Indus. Coatings and Services, Inc., 938 S.W.2d 27, 28 (Tex. 1996) (per curiam).")

[5] As the California Supreme Court explained in Montrose: "there are substantial analytical differences between first party property and third party liability policies" and "first party insurance policy provides coverage for loss or damage sustained directly by the insured (e.g., life, disability, health, fire, theft and casualty insurance). ***A third party liability policy, in contrast, provides coverage for liability of the insured to a 'third party'*** (e.g., a CGL policy, ***a directors and officers liability policy***, or an errors and omissions policy). In the usual first party policy, the insurer promises to pay money to the insured upon the happening of an event, the risk of which has been insured against. In the typical third party liability policy, the carrier assumes a contractual duty to pay judgments the insured becomes legally obligated to pay as damages because of bodily injury or property damage caused by the insured." Id. at 654, 663. (Emphasis added.)

[6] It is unclear from Westcott's pleading whether Count IV is based on the Texas Insurance Code or the Texas Deceptive Practices Act. However, as discussed herein, under either statute notice is a prerequisite to filing suit.

11

69862.1

Although there are no cases interpreting Section 16(e), a substantively identical notice provision is set forth in Section 17.505 of the Texas Deceptive Trade Practices Act.[7] In Keith v. Stoelting, 915 F.2d 996, 998 (5th Cir. 1990), the Fifth Circuit stated with respect to Section 17.505: "Before filing suit, a DTPA plaintiff must give written notice of his specific complaint and the amount of actual damages and expenses. Tex. Bus. & Com Code Ann. §17.505(a). ***Plaintiff has the burden to plead and prove compliance with this notice requirement***, and Keith failed to do so. How Insurance Company v. Patriot Financial Services of Texas, Inc., 786 S.W.2d 533, 537 (Tex.App.—Austin 1990, *overruled on other grounds*). Keith's petition states no cause of action under the DTPA." (Emphasis added.)

Westcott has not pleaded that it has complied with Article 21.21, Section 16(e) of the Texas Insurance Code and, therefore, Carolina respectfully requests this Court to dismiss Westcott's causes of action or, in the alternative, to abate the same for at least 60 days following a ruling on this Motion.[8]

---

[7] Specifically, Section 17.505(a) provides: "As a prerequisite to filing a suit seeking damages under Subdivision (1) of Subsection (b) of Section 17.50 of this subchapter against any person, a consumer shall give written notice to the person at least 60 days before filing the suit advising the person in reasonable detail of the consumer's specific complaint and the amount of economic damages, damages for mental anguish, and expenses, including attorneys' fees, if any, reasonably incurred by the consumer in asserting the claim against the defendant...". Section 17.505(c) provides: "A person against whom a suit is pending who does not receive written notice, as required by Subsection (a), may file a plea in abatement not later than the 30th day after the date the person files an original answer in the court in which the suit is pending. This subsection does not apply if Subsection (b) applies."

[8] Section 16(g) of the Texas Insurance Code provides: "A person against whom a suit is pending who does not receive written notice, as required by Subsection (e) of this section, may file a plea in abatement not later than the 30th day after the date the person files an original answer in the court in which the suit is pending. This subsection does not apply if Subsection (f) of this section applies." Section 16(h) provides: "The court ***shall abate*** the suit if the court, after hearing, finds that the person is entitled to an abatement because notice was not provided as required by this section." (Emphasis added.)

## V. CONCLUSION

Carolina respectfully requests this Court to dismiss Westcott's Complaint in its entirety for the reasons set forth herein.

Respectfully submitted,

By: *Martin S. Schexnayder*
Martin S. Schexnayder
State Bar No. 17745610
Federal Bar No. 15146
Delia Reyna
State Bar No. 24037352

**ATTORNEYS-IN-CHARGE
FOR DEFENDANTS**

OF COUNSEL:

**WILSON, ELSER, MOSKOWITZ,
 EDELMAN & DICKER, LLP**

James K. Thurston
Anjali C. Das
120 North LaSalle Street
Suite 2600
Chicago, Illinois 60602
Telephone: 312/704-0550
Telecopy: 312/704-0515

### CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing instrument was delivered to all counsel of record by certified mail, return receipt requested, and/or regular mail, and/or facsimile on this the 8th day of July, 2005.

Kent W. Robinson
Christopher P. Seufert
Andrews Kurth LLP
600 Travis, Suite 4200
Houston, Texas 77002

*Delia Reyna*
Delia Reyna

13

69862.1