# United States District Court Southern District of Texas

## Case Number: CV 05-1945

**DEFENDANTS MONITOR LIABILITY MANAGERS, INC. AND
CAROLINA CASUALTY INSURANCE COMPANY'S
MOTION TO DISMISS PURSUANT TO
<u>FEDERAL RULE OF CIVIL PROCEDURE 12(B)(6) AND BRIEF IN SUPPORT</u>**

Description:

- ☐ State Court Record          ☐ State Court Record Continued

- ☐ Administrative Record

- ☐ Document continued - Part _____ of _____

- ☒ Exhibit to: _____ **1** _____
    number(s) / letter(s) _____

Other: _____

_____

_____

# IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF TEXAS
### HOUSTON DIVISION

|  |  |  |
|---|---|---|
| WESTCOTT HOLDING, INC., f/k/a | ) | |
| SPECIALITY PIPING COMPONENTS, | ) | |
| INC., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civil Action 4:05-01945 |
| | ) | |
| MONITOR LIABILITY MANAGERS, | ) | |
| INC., and CAROLINA CASUALTY | ) | |
| INSURANCE COMPANY, | ) | |
| | ) | |
| Defendants. | ) | |

United States Courts
Southern District of Texas
FILED

JUL 0 8 2005

Michael N. Milby, Clerk

## EXHIBITS

1.   Carolina's Directors' and Officers' Liability Insurance Policy

2.   Foroni Lawsuit --Plaintiff's Original Petition

3.   Hughes Lawsuit -- Plaintiff's First Amended Original Petition

4.   Monitor Liability Managers, Inc.'s June 28, 2004 Letter

5.   Verising, Inc. v. Internet Corp.

6.   Branch

7.   Romani v. Shearson Lehman Hutton

8.   Parrino v. FHP, Inc.

69878.1

9.   Wright & Miller, *Fed. Prac. and Pro.* § 1363

10.  <u>McMillan, Inc. v. Federal Insurance Co.</u>

11.  <u>Farmers & Merchant Bank v. Home Ins. Co.</u>

12.  "Directors and Officers Liability Insurance: Probable Directions in Texas Law"

13.  "D&O Insurance for In-House Counsel Serving as Corporate Directors and Officers"

14.  <u>Travelers Indemnity Co. v. Citgo Petroleum Co.</u>

15.  <u>Montrose Chemical Corp. v. Admiral Ins. Co.</u>

Tab 1

# Carolina Casualty Insu e Company

8381 Dix Ellis Trail, Jacksonville, FL 32256

**Revised**

### Directors' and Officers' Liability Insurance

**Declarations Page**

## CLAIMS MADE WARNING FOR DECLARATION

**NOTICE: THIS POLICY PROVIDES COVERAGE ON A CLAIMS MADE BASIS SUBJECT TO ITS TERMS. THIS POLICY APPLIES ONLY TO ANY "CLAIM" (AS DEFINED IN THE POLICY) FIRST MADE AGAINST THE INSUREDS DURING THE POLICY PERIOD OR THE EXTENDED REPORTING PERIOD, IF APPLICABLE. THE LIMIT OF LIABILITY AVAILABLE TO PAY DAMAGES OR SETTLEMENTS SHALL BE REDUCED AND MAY BE EXHAUSTED BY AMOUNTS INCURRED AS "COSTS OF DEFENSE" (AS DEFINED IN THE POLICY) AND "COSTS OF DEFENSE" SHALL BE APPLIED TO THE RETENTION.**

**PLEASE READ AND REVIEW THE POLICY CAREFULLY AND DISCUSS THE COVERAGE WITH YOUR INSURANCE AGENT OR BROKER.**

Whenever printed in this Declarations Page, the boldface type shall have the same meanings as indicated in the Policy.

Policy Form: DO 21200 7/96

Policy Number: 1331303

Item 1.  Name and Address of **Parent Organization:**

Specialty Piping Components, Inc.
Suite 500
550 Wescott Street
Houston, TX 77007

Person designated to receive all correspondence from the **Insurer:**
Sherri Fruge', Chief Financial Officer

Item 2.  **Policy Period:**  From March 15, 2003 (inception date) to March 15, 2008 (expiration date)
*(Both dates at 12:01 a.m. Standard Time at the address of the **Parent Organization**)*

Item 3.  Aggregate Limit of Liability for the **Policy Period** (inclusive of **Costs of Defense**): $5,000,000

Item 4.  Applicable Retentions:

| | | |
|---|---|---|
| **Securities Claims:** | Judgments and Settlements (all coverages) | None |
| | **Costs of Defense** (Coverage A.) | $0 |
| | **Costs of Defense** (Coverage B.) | $50,000 |
| Other Claims: | Judgments, Settlements and **Costs of Defense** (Coverage A.) | $0 |
| | Judgments, Settlements and **Costs of Defense** (Coverage B. 2.) | $50,000 |

Item 5.  Premium: $154,000

Item 6.  **Continuity Dates:**

| | | |
|---|---|---|
| | A. Coverages A. and B. 2. | March 15, 2002 |
| | B. Coverage B. 1. | March 15, 2002 |
| | C. Outside Entity Coverage: Per Outside Entity (see endorsement, if applicable) | March 15, 2002 |

**Carolina Casualty Insurance Company**
**Declarations for Directors' and Officers' Liability Insurance**

Item 7.     Endorsements attached:

| | |
|---|---|
| 200220 | Texas IMPORTANT NOTICE |
| 200221 | Texas Amendatory Endorsement |
| 212100 | Modification to Section II. Run-off Coverage Endorsement |
| 214322 | Addition to Section IV. Interested Party Exclusion |
| 214350 | Addition to Section IV. Professional Services Exclusion |
| 214400 | Addition to Section IV. Copyright Patent Infringement Exclusion |
| 214201 | Addition to Section IV. Nuclear Energy Liability Exclusion |
| 214331 | Addition to Section IV. Limited SEC Exclusion |
| 216015 | Addition to Section VI. Priority of Payments Endorsement |
| 215013 | Modification to Section V. Non-Stacking of Limits |
| 214310 | Addition to Section IV. Past Acts Exclusion |
| 219000 | Deletion of Endorsement |

Item 8.     Notice to the **Insurer** as provided in sections VII. A. and VII. B. and any information furnished to the **Insurer** as provided in section VI. B. shall be addressed to:
Monitor Liability Managers, Inc., Claims Department, 2850 West Golf Road, Suite 800, Rolling Meadows, IL 60008.

All other notices required to be given to the **Insurer** under this Policy shall be addressed to:
Monitor Liability Managers, Inc., 2850 West Golf Road, Suite 800, Rolling Meadows, IL 60008.

These Declarations along with the completed and signed Proposal Form and the Directors' and Officers' and Corporate Liability Insurance Policy, shall constitute the contract between the **Directors and Officers**, the **Company** and the **Insurer**.

Authorized Representative: _____          Date Issued: December 10, 2002

DO 21201 (07/96)                                                                          Page 2 of 2

Carolina Casualty Insurance Company

Directors' and Officers' and Corporate Liability Insurance Policy

**This is a Claims Made Policy. Please read it carefully.**

**Carolina Casualty Insurance Company**

### CLAIMS MADE WARNING FOR POLICY

**NOTICE:  THIS POLICY PROVIDES COVERAGE ON A CLAIMS-MADE BASIS SUBJECT TO ITS TERMS.  THIS POLICY APPLIES ONLY TO ANY "CLAIM" (AS DEFINED IN THE POLICY) FIRST MADE AGAINST THE INSUREDS DURING THE POLICY PERIOD OR THE EXTENDED REPORTING PERIOD, IF APPLICABLE.  THE LIMIT OF LIABILITY AVAILABLE TO PAY DAMAGES OR SETTLEMENTS SHALL BE REDUCED AND MAY BE EXHAUSTED BY AMOUNTS INCURRED AS "COSTS OF DEFENSE" (AS DEFINED IN THE POLICY) AND "COSTS OF DEFENSE" SHALL BE APPLIED TO THE RETENTION.**

**PLEASE READ AND REVIEW THE POLICY CAREFULLY AND DISCUSS THE COVERAGE WITH YOUR INSURANCE AGENT OR BROKER.**

In consideration of the payment of the premium, and in reliance upon the statements made to the **Insurer** by application forming a part hereof and its attachments and the material incorporated therein, the **Insurer** agrees as follows:

## I.  Insuring Agreements

### Coverage A.  Directors and Officers Insurance

This Policy shall pay the **Loss** of each and every **Director or Officer** of the **Company** arising from any **Claim** first made against the **Directors or Officers** during the **Policy Period** or the Extended Reporting Period (if applicable) for any actual or alleged **Wrongful Act**, except and to the extent that the **Company** has indemnified the **Directors or Officers**.  The **Insurer** shall, subject to section VI., advance **Costs of Defense** of such **Claim** prior to its final disposition.

### Coverage B.  Corporate Liability Insurance

This Policy shall pay the **Loss** of the **Company** arising from any:

1.        **Securities Claim** first made against the **Company**, or

2.        **Claim** first made against the **Directors or Officers**,

during the **Policy Period** or the Extended Reporting Period (if applicable) for any actual or alleged **Wrongful Act**, but, in the case of Coverage B. 2. above, only to the extent that the **Company** has indemnified the **Directors or Officers** for such **Loss** as permitted by law. The **Insurer** shall, subject to section VI., advance **Costs of Defense** of such **Claim** prior to its final disposition.

## II.  Extended Reporting Period

A.        Except as indicated below, if the **Parent Organization** cancels or if the **Insurer** or the **Parent Organization** refuses to renew this Policy, the **Parent Organization** shall have the right, upon payment of an additional premium of 75 percent of the "full annual premium", to an extension of the coverage granted by this Policy with respect to any **Claim** first made during the period of 12 months immediately following the effective date of such cancellation or non-renewal, but only with respect to any **Wrongful Act** occurring prior to the end of the **Policy Period** and otherwise covered by this Policy.  Such 12 month period or such other period as the **Insurer** may provide pursuant to section II. B. below shall be referred to as the Extended Reporting Period.  As used herein, "full annual premium" means the premium level in effect immediately prior to the end of the **Policy Period**.  The rights contained in this paragraph shall terminate, however, unless written notice of such election together with the additional premium due is received by the **Insurer** within 30 days of the effective date of cancellation or non-renewal.

B.        In the event of a Transaction, as defined in section VIII. C., the **Parent Organization** shall have the right, within 30 days before the end of the **Policy Period**, to request an offer from the **Insurer** of an Extended Reporting Period of no less than 3 years or for such longer or shorter period as the **Parent Organization** may request (but such extension shall only be with respect to **Wrongful Acts** occurring prior to the effective time of the Transaction).  The **Insurer** shall offer such Extended Reporting Period pursuant to such terms, conditions and premium as the **Insurer** may reasonably decide.  In the event of a Transaction, the **Insureds** shall have no right to an Extended Reporting Period except as indicated in this section II. B.

C.        The additional premium for the Extended Reporting Period shall be fully earned at the inception of the Extended Reporting Period. The Extended Reporting Period is not cancelable.

The descriptions in the headings of this Policy are solely for convenience, and form no part of the terms and conditions of coverage.

**Carolina Casualty Insurance Company**

## III. Definitions

Whenever printed in boldface type in this Policy, the following terms shall have the meanings indicated below.

A.      **"Claim"** means:

       1.      a written demand for monetary or non-monetary relief, or

       2.      a civil, criminal, administrative or arbitration proceeding for monetary or non-monetary relief which is commenced by:

           a.      service of a complaint or similar pleading, or

           b.      return of an indictment (in the case of a criminal proceeding), or

           c.      receipt or filing of a notice of charges.

       The term **"Claim"** shall include a **Securities Claim**; provided, however, that with respect to Coverage B. 1. only, **Claim** or **Securities Claim** shall not mean an administrative proceeding against the **Company**.

B.      **"Company"** means the **Parent Organization** and any **Subsidiary**.

C.      **"Continuity Date"** means the date set forth in:

       1.      Item 6. A. of the Declarations with respect to Coverages A. and B. 2., or

       2.      Item 6. B. of the Declarations with respect to Coverage B. 1., or

       3.      Item 6. C. of the Declarations with respect to Coverages A. or B. for a **Claim** against an **Insured** arising out of such **Insured** serving as a director, officer, trustee or governor of an **Outside Entity**.

D.      **"Costs of Defense"** means reasonable and necessary fees, costs and expenses (including premiums for any appeal bond, attachment bond or similar bond, but without any obligation to apply for or furnish any such bond) resulting solely from the investigation, adjustment, defense and appeal of a **Claim** against the **Insureds**, but excluding salaries of **Officers** or employees of the **Company** or any amount covered by the duty to defend obligation of any other insurer.

E.      **"Director(s) or Officer(s)"** means any past, present or future duly elected or appointed directors or officers of the **Company**. In the event the **Parent Organization** or a **Subsidiary** thereof operates outside the United States, then the term **"Director(s) or Officer(s)"** also means those titles, positions or capacities in such foreign **Parent Organization** or **Subsidiary** which is equivalent to the position of **Director or Officer** in a corporation incorporated within the United States. Coverage will automatically apply to all new **Directors and Officers** after the Policy inception date.

       This Policy shall cover **Loss** arising from a **Claim** made against the estates, heirs, or legal representatives of deceased **Directors or Officers**, and the legal representatives of **Directors or Officers** in the event of incompetency, insolvency or bankruptcy, who were **Directors or Officers** at the time the **Wrongful Acts** upon which such **Claims** are based were committed.

       This Policy shall cover **Loss** arising from a **Claim** made against the lawful spouse (whether such status is derived by reason of statutory law, common law or otherwise of any applicable jurisdiction in the world) of an individual **Director or Officer** for a **Claim** arising solely out of his or her status as the spouse of an individual **Director or Officer**, including a **Claim** that seeks damages recoverable from marital community property, property jointly held by the individual **Director or Officer** and the spouse, or property transferred from the individual **Director or Officer** to the spouse; provided, however, that this extension shall not afford coverage for any **Claim** for any actual or alleged **Wrongful Act** of the spouse, but shall apply only to **Claims** arising out of any actual or alleged **Wrongful Acts** of an individual **Director or Officer**, subject to this Policy's terms, conditions and exclusions.

F.      **"Financial Insolvency"** means the appointment of a receiver, conservator, liquidator, trustee, rehabilitator or similar official to take control of, supervise, manage or liquidate the **Company** or the **Company** becoming a debtor in possession.

G.      **"Insured(s)"** means:

       1.      with respect to Coverages A. and B. 2., any **Directors and Officers**; and

       2.      with respect to Coverage B. 1. only, the **Company**.

H.      **"Insurer"** means the entity issuing this Policy as listed on the Declarations Page.

The descriptions in the headings of this Policy are solely for convenience, and form no part of the terms and conditions of coverage.

## Carolina Casualty Insurance Company

I.   **"Loss"** means damages, judgments, settlements and **Costs of Defense**; however, **Loss** shall not include civil or criminal fines or penalties imposed by law, punitive or exemplary damages, the multiplied portion of multiplied damages, taxes, any amount for which the **Insureds** are not financially liable or which are without legal recourse to the **Insureds**, or matters which may be deemed uninsurable under the law pursuant to which this Policy shall be construed.

Further, with respect to Coverage B. only, **Loss** shall not include damages, judgments or settlements arising out of a **Claim** alleging that the **Company** paid an inadequate price or consideration for the purchase of its own securities or the securities of a **Subsidiary**.

Notwithstanding the foregoing, with respect to Coverage B. 1. only and subject to the other terms, conditions and exclusions of the Policy, **Loss** shall include punitive or exemplary damages (if insurable by law) imposed upon the **Company**.

J.   **"No Liability"** means with respect to a **Securities Claim** made against the **Insured(s)**:

1.   a final judgment of no liability obtained prior to trial, in favor of all **Insureds**, by reason of a motion to dismiss or a motion for summary judgment, after the exhaustion of all appeals, or

2.   a final judgment of no liability obtained after trial, in favor of all **Insureds**, after the exhaustion of appeals.

In no event shall the term **"No Liability"** apply to a **Securities Claim** made against an **Insured** for which a settlement has occurred.

K.   **"Outside Entity"** means:

1.   a not-for-profit organization under Section 501(c)(3) of the Internal Revenue Code of 1986 (as amended), or

2.   any other corporation, partnership, joint venture or other organization listed by endorsement to this Policy.

L.   **"Parent Organization"** means the corporation designated in Item 1. of the Declarations.

M.   **"Policy Period"** means the period of time from the inception date shown in Item 2. of the Declarations to the earlier of the expiration date shown in Item 2. of the Declarations or the effective date of cancellation of this Policy; however, to the extent that coverage under this Policy replaces coverage in other policies terminating at noon standard time on the inception date of such coverage hereunder, then such coverage as is provided by this Policy shall not become effective until such other coverage has terminated.

N.   **"Related Wrongful Acts"** means **Wrongful Acts** which are logically or causally connected by reason of any common fact, circumstance, situation, transaction, casualty, event or decision.

O.   **"Securities Claim"** means a **Claim** (including a civil lawsuit or criminal proceeding brought by the Securities and Exchange Commission) made against an **Insured** and brought anywhere in the world alleging a violation of any law, regulation or rule, whether statutory or common law, which is brought by:

1.   any person or entity alleging, arising out of, based upon or attributable to, in whole or in part, the purchase or sale, or offer or solicitation of an offer to purchase or sell, any securities of the **Company**; or

2.   a security holder of the **Company** directly or by class action alleging any **Wrongful Act** of an **Insured**.

P.   **"Subsidiary"** means:

1.   a corporation of which the **Parent Organization** owns on or before the inception of the **Policy Period** more than 50 percent of the issued and outstanding voting stock either directly or indirectly through one or more of its **Subsidiaries**,

2.   automatically a corporation whose assets total less than 20 percent of the total consolidated assets of the **Company** as of the **Policy** inception date, which corporation becomes a **Subsidiary** during the **Policy Period**. The **Parent Organization** shall provide the **Insurer** with full particulars of the new **Subsidiary** before the end of the **Policy Period**,

3.   a corporation which becomes a **Subsidiary** during the **Policy Period** (other than a corporation described in section III. P. 2. above) but only upon the condition that within 90 days of it becoming a **Subsidiary**, the **Parent Organization** shall have provided the **Insurer** with full particulars of the new **Subsidiary** and agreed to any additional premium and/or amendment of the provisions of this Policy required by the **Insurer** relating to such new **Subsidiary**. Further, coverage as shall be afforded to the new **Subsidiary** is conditioned upon the **Parent Organization** paying when due any additional premium required by the **Insurer** relating to such new **Subsidiary**.

A corporation becomes a **Subsidiary** when the **Parent Organization** owns more than 50 percent of the issued and outstanding voting stock either directly, or indirectly through one or more of its **Subsidiaries**. A corporation ceases to be a **Subsidiary** when the **Parent Organization** ceases to own more than 50 percent of the issued and outstanding voting stock either directly, or indirectly through one or more of its **Subsidiaries**.

The descriptions in the headings of this Policy are solely for convenience, and form no part of the terms and conditions of coverage.

## Carolina Casualty Insurance Company

In all events, coverage as is afforded with respect to a **Claim** made against a **Subsidiary** or any **Director or Officer** thereof shall only apply for **Wrongful Acts** committed or allegedly committed after the effective time that such **Subsidiary** became a **Subsidiary** and prior to the time that such **Subsidiary** ceased to be a **Subsidiary**.

Q.   "**Wrongful Act**" means:

1.   with respect to individual **Directors or Officers**, any breach of duty, neglect, error, misstatement, misleading statement, omission or act by the **Directors or Officers** of the **Company** in their respective capacities as such, or any matter claimed against them by reason of their status as **Directors or Officers** of the **Company**, or any matter claimed against them arising out of their serving as a director, officer, trustee or governor of an **Outside Entity** in such capacities, but only if such service is at the specific written request or direction of the **Company**,

2.   with respect to the **Company**, any breach of duty, neglect, error, misstatement, misleading statement, omission or act by the **Company**, but solely as respects a **Securities Claim**.

## IV.  Exclusions

The **Insurer** shall not be liable to make any payment for **Loss** in connection with a **Claim** made against any **Insured**:

A.   based upon, arising out of, directly or indirectly resulting from or in consequence of, or in any way involving the gaining in fact of any profit or advantage to which an **Insured** was not legally entitled;

B.   based upon, arising out of, directly or indirectly resulting from or in consequence of, or in any way involving the committing in fact of any criminal or deliberate fraudulent act;

C.   based upon, arising out of, directly or indirectly resulting from or in consequence of, or in any way involving:

1.   profits in fact made from the purchase or sale by an **Insured** of securities of the **Company** within the meaning of Section 16(b) of the Securities Exchange Act of 1934 and amendments thereto or similar provisions of any state statutory law, or

2.   payments to an **Insured** of any remuneration without the previous approval of the stockholders of the **Company**, which payment without such previous approval shall be held to have been illegal;

[The **Wrongful Act** of a **Director or Officer** shall not be imputed to any other **Director or Officer** for the purpose of determining the applicability of Exclusions A., B. and C.]

D.   for bodily injury, sickness, disease, death or emotional distress of any person, or damage to or destruction of any tangible property, including the loss of use thereof, or for injury from libel or slander or defamation or disparagement, or for injury from a violation of a person's right of privacy;

E.   for violation(s) of any of the responsibilities, obligations or duties imposed upon fiduciaries by the Employee Retirement Income Security Act of 1974, or amendments thereto or any similar provisions of state statutory law or common law in connection with any pension or welfare plan of the **Company**;

F.   by, on behalf of, or in the right of the **Company**, or by any of the **Directors or Officers**; provided, however, this exclusion does not apply to:

1.   any **Claim** by any security holder of the **Company**, whether directly or derivatively, but only if such **Claim** is instigated and continued totally independent of, and totally without the solicitation of, or assistance of, or active participation of, or intervention of, any **Insured** or the **Company**,

2.   any employment-related **Claim** by any of the **Directors or Officers**, or

3.   any **Claim** by any of the **Directors or Officers** for contribution or indemnity, if such **Claim** directly results from another **Claim** covered under this Policy;

G.   which is insured in whole or in part by another valid policy (other than a policy issued to or for the benefit of any **Outside Entity** or its directors or officers), except with respect to any excess beyond the amount or amounts of coverage under such other policy whether such other policy is stated to be primary, contributory, excess, contingent or otherwise;

H.   which is insured in whole or in part under any policy issued to or for the benefit of any **Outside Entity** or its directors or officers; provided, however, if such **Claim** is insured by another policy issued by the **Insurer** or any member company of W. R. Berkley Corporation (Berkley), or would be insured but for the application of the retention amount, exhaustion of the limit of liability or failure to submit a notice of a **Claim**, then the maximum aggregate Limit of Liability for all **Losses** combined resulting from such **Claim** shall be reduced by the limit of liability (as set forth on the Declarations Page) of such other Berkley insurance;

The descriptions in the headings of this Policy are solely for convenience, and form no part of the terms and conditions of coverage.

**Carolina Casualty Insurance Company**

I.  based upon, arising out of, directly or indirectly resulting from or in consequence of, or in any way involving any actual or alleged act or omission of the **Directors or Officers** serving in their capacities as directors, officers, trustees or governors of any other entity other than the **Company** or an **Outside Entity**, or by reason of their status as directors, officers, trustees or governors of such other entity;

J.  for any **Wrongful Act** arising out of the **Insured** serving as a director, officer, trustee or governor of an **Outside Entity**:

    1.  if such **Claim** is brought by the **Outside Entity** or any of its directors or officers, or by any security holder of the **Outside Entity**, whether directly or derivatively, unless such security holder's **Claim** is instigated and continued totally independent of, and totally without the solicitation of, or assistance of, or active participation of, or intervention of, the **Outside Entity**, any of its directors or officers, or any **Insured**,

    2.  if such **Wrongful Act** occurred prior to the **Continuity Date** and if the **Insured** knew or could have reasonably foreseen that such **Wrongful Act** could lead to a **Claim** under this Policy, or

    3.  to the extent such **Insured** is indemnified for such **Loss** by such **Outside Entity**;

K.  based upon, arising out of, directly or indirectly resulting from or in consequence of, or in any way involving actual or alleged seepage, pollution or contamination of any kind;

L.  based upon, arising out of, directly or indirectly resulting from or in consequence of, or in any way involving:

    1.  any **Wrongful Act** alleged in any claim which has been reported, or in any circumstance of which notice has been given, prior to the **Policy Period** under any other policy, or

    2.  any other **Wrongful Act** whenever occurring, which together with a **Wrongful Act** which has been the subject of such claim or notice, would constitute **Related Wrongful Acts**;

M.  based upon, arising out of, directly or indirectly resulting from or in consequence of, or in any way involving:

    1.  any prior or pending litigation, administrative or arbitration proceeding as of **Continuity Date**, or

    2.  any fact, circumstance, situation, transaction or event underlying or alleged in such litigation, administrative or arbitration proceeding,

    regardless of the legal theory upon which such **Claim** is predicated.

## V. Limit of Liability and Retentions

A.  The Limit of Liability stated in Item 3. of the Declarations is the limit of the **Insurer's** liability for all **Loss**, under all Coverages combined, arising out of all **Claims** first made against the **Insureds** during the **Policy Period** and the Extended Reporting Period (if applicable); however, the Limit of Liability for the Extended Reporting Period shall be part of, and not in addition to, the Limit of Liability for the **Policy Period**. Further, any **Claim** made subsequent to the **Policy Period** or Extended Reporting Period (if applicable) which pursuant to section VII. B. or VII. C. is deemed first made during the **Policy Period** or Extended Reporting Period shall also be subject to the aggregate Limit of Liability stated in Item 3. of the Declarations.

B.  **Costs of Defense** are not payable by the **Insurer** in addition to the Limit of Liability. **Costs of Defense** are part of **Loss** and as such are subject to the Limit of Liability for **Loss**.

C.  The **Insurer** shall only be liable for the amount of **Loss** arising from a **Claim** which is in excess of the applicable Retention amount stated in Item 4. of the Declarations, such Retention amount to be borne by the **Company** and/or the **Insureds**, with regard to all **Loss** under:

    1.  Coverage A. ("non-indemnifiable **Loss**");

    2.  Coverage B. 1.; or

    3.  Coverage B. 2. for which the **Company** has indemnified or is permitted or required to indemnify the **Director(s) or Officer(s)** ("Indemnifiable **Loss**").

D.  Except as provided below, one Retention amount shall apply to each and every **Claim**.

E.  Solely with respect to a **Securities Claim** under this Policy, the Retention shall only apply to **Costs of Defense**. However, no Retention shall apply, even as to **Costs of Defense**, to any **Securities Claim** in which:

    1.  there is a determination of **No Liability**; or

    2.  the **Claim** is dismissed or stipulated dismissed without prejudice and without any payment of any consideration by any **Insured**.

The descriptions in the headings of this Policy are solely for conveṙ ə̇ an I fo n nc pa ˙~′ ɩne terms and conditions of coverage.

**Carolina Casualty Insurance Company**

If there is a determination of **No Liability** in a **Securities Claim**, the **Insurer** shall reimburse **Costs of Defense** paid by the **Insured** in such **Claim**.

If a **Securities Claim** is dismissed or stipulated dismissed without prejudice and without any payment of any consideration by any **Insured**, the **Insurer** shall reimburse **Costs of Defense** paid by the **Insured** in such **Claim** 90 days after the date of the dismissal or stipulation so long as (i) the **Claim** (or any other **Claim** which together with such **Claim** would be deemed a single **Claim**) is not brought again within such 90 day period and (ii) the **Company** provides the **Insurer** with a written undertaking in a form satisfactory to the **Insurer** to repay the **Insurer** for such reimbursement in the event the **Claim** (or any other **Claim** which together with such **Claim** would be deemed a single **Claim**) is brought again after such 90 day period and before the expiration of the statute of limitations for such **Claim**.

F.   In the event the **Company** is permitted or required to indemnify the **Director(s) or Officer(s)** for **Loss** but the **Company** is financially or legally unable to pay such **Loss** by reason of **Financial Insolvency**, no Retention amount shall apply under Coverage A. or under Coverage B. 2. of this Policy with regard to such **Loss**.

## VI. Defense, Cooperation and Settlements

A.   Under all Coverages of this Policy, except as hereinafter stated, the **Insurer** shall advance, at the written request of the **Insured**, **Costs of Defense** prior to the final disposition of a **Claim**. Such advance payments by the **Insurer** shall be repaid to the **Insurer** by the **Insureds** or the **Company**, severally according to their respective interests, in the event and to the extent that the **Insureds** or the **Company** shall not be entitled under the terms and conditions of this Policy to payment of such **Loss**.

B.   The **Insurer** does not, however, under this Policy, assume any duty to defend. The **Insureds** shall defend and contest any **Claim** made against them. The **Insureds** shall not admit or assume any liability, enter into any settlement agreement, stipulate to any judgment, or incur any **Costs of Defense** without the prior written consent of the **Insurer**. Only those settlements, stipulated judgments and **Costs of Defense** which have been consented to by the **Insurer** shall be recoverable as **Loss** under the terms of this Policy. The **Insurer's** consent shall not be unreasonably withheld, provided that the **Insurer** shall be entitled to full information and all particulars it may request in order to reach a decision as to such consent and shall be entitled to effectively associate in the defense and the negotiation of any settlement of any **Claim**.

C.   The **Company** is not covered in any respect under Coverage A.; the **Company** is covered, subject to this Policy's terms and conditions, only with respect to its indemnification of its **Directors or Officers** under Coverage B. 2. as respects a **Claim** against such **Directors and Officers**, and subject to this Policy's terms and conditions, under Coverage B. 1. for a **Securities Claim** made against the **Company**. Accordingly, the **Insurer** has no obligation under this Policy for **Costs of Defense** incurred by, judgments against or settlements by the **Company** arising out of a **Claim** made against the **Company** other than a covered **Securities Claim**, or any obligation to pay **Loss** arising out of any legal liability that the **Company** has to a claimant except as respects a covered **Securities Claim** against the **Company**.

D.   With respect to **Costs of Defense** jointly incurred by, any joint settlement made by, and/or any adjudicated judgment of joint and several liability against the **Company** and any **Director or Officer**, in connection with any **Claim** other than a **Securities Claim**, the **Company** and the **Director(s) or Officer(s)** and the **Insurer** agree to use their best efforts to determine a fair and proper allocation of the amounts as between the **Company** and the **Director(s) or Officer(s)** and the **Insurer**. In determining a fair and proper allocation, the **Directors and Officers** and the **Company** expressly acknowledge that the **Directors and Officers** and the **Company** each face independent exposure. In the event that a determination as to the amount of **Costs of Defense** to be advanced under this Policy cannot be agreed to, then the **Insurer** shall advance such **Costs of Defense** which the **Insurer** states to be fair and proper until a different amount shall be agreed upon or determined pursuant to the provisions of this Policy and applicable law.

## VII. Notice of Claim and Multiple Claims

A.   As a condition precedent to their rights under this Policy, the **Insureds** shall give the **Insurer** written notice of any **Claim** against an **Insured** as soon as practicable, but in no event later than 90 days after such **Claim** is first made.

B.   If during the **Policy Period** or the Extended Reporting Period (if applicable) the **Insureds** become aware of any fact, circumstance or situation which may reasonably be expected to give rise to a **Claim** being made against the **Insureds** and shall give written notice to the **Insurer** of the circumstance and the reasons for anticipating such a **Claim**, with full details as to dates, persons and entities involved, then any **Claim** subsequently made against the **Insureds** based upon or arising out of such circumstance, shall be deemed made at the time such notice of such circumstance was given.

C.   All **Claims** based upon or arising out of the same **Wrongful Act** or any **Related Wrongful Acts**, or one or more series of any similar, repeated or continuous **Wrongful Acts** or **Related Wrongful Acts**, shall be considered a single **Claim**. Each such single **Claim** shall be deemed to have been made on the earlier of the following times:

The descriptions in the headings of this  ̣ ̣ y  ̣ ̣  ̣ ̣  ̣ ̣  ̣ ̣  ̣ ̣  ̣ ̣  ̣ ̣  ̣ ̣ form no part of the terms and conditions of coverage.

**Carolina Casualty Insurance Company**

    1.       when the earliest **Claim** arising out of such **Wrongful Act** or **Related Wrongful Acts** was first made, or

    2.       when notice pursuant to section VII. B. of a fact, circumstance, or situation giving rise to such **Claim** is given.

## VIII. General Conditions

### A. Termination of Policy and Non-Renewal

1. This Policy shall terminate at the earliest of the following times:

   a. upon the receipt by the **Insurer** of written notice of cancellation from the **Parent Organization**;

   b. upon expiration of the **Policy Period** as set forth in Item 2. of the Declarations;

   c. at such other time as may be agreed between the **Parent Organization** and the **Insurer**; or

   d. 20 days after receipt by the **Parent Organization** of the **Insurer's** written notice of cancellation for non-payment of premium.

2. The **Insurer** may not cancel this Policy except for non-payment of any premium when due.

3. If this Policy is cancelled by the **Parent Organization**, the **Insurer** shall retain the customary short rate proportion of the premium herein. Payment or tender of any unearned premium by the **Insurer** shall not be a condition precedent to the effectiveness of cancellation, but such payment shall be made as soon as practicable.

4. If the **Insurer** decides not to renew this Policy, the **Insurer** shall provide written notice to the **Parent Organization** at least 60 days prior to the end of the **Policy Period**. *The notice shall include the reason for such non-renewal.*

5. If the **Insurer** offers to renew this Policy on terms which involve any change in Retention amount, premium, Limit of Liability or other terms and conditions, the **Insurer** shall provide written notice to the **Parent Organization** at least 60 days prior to the end of the **Policy Period**.

6. Any notices to be given to the **Parent Organization** under this section shall be provided to the **Parent Organization** at the last known principal address and to its insurance agent or broker. The mailing by certified mail of such notice shall be sufficient.

### B. Action Against the Insurer

No action shall lie against the **Insurer** unless, as a condition precedent thereto, there shall have been full compliance with all of the terms of this Policy, nor until the amount of the **Insureds'** obligation to pay shall have been finally determined either by judgment against the **Insureds** after actual trial or by written agreement of the **Insureds**, the claimant and the **Insurer**.

Any person or organization or the legal representative thereof who has secured such judgment or written agreement shall thereafter be entitled to recover under this Policy to the extent of the insurance afforded by this Policy. No person or organization shall have any right under this Policy to join the **Insurer** as party to any action against the **Insureds** or the **Company** to determine the **Insureds'** liability, nor shall the **Insurer** be impleaded by the **Insureds** or the **Company** or their legal representatives. Bankruptcy or insolvency of the **Company** or the **Insureds** or of their estates shall not relieve the **Insurer** of any of its obligations hereunder.

The descriptions in the headings of this Policy are solely for convenience, and form no part of the terms and conditions of coverage.

**Carolina Casualty Insurance Company**

## C.    Changes in Ownership

If during the **Policy Period**:

1.    the **Parent Organization** shall consolidate with or merge into, or sell all or substantially all of its assets to any other person or entity or group of persons and/or entities acting in concert, or

2.    any person or entity or group of persons and/or entities acting in concert shall acquire an amount of the outstanding securities representing more than 50 percent of the voting power for the election of **Directors** of the **Parent Organization**, or acquires the voting rights of such an amount of such securities;

                    (either of the above events herein referred to as the "Transaction")

then, this Policy shall continue in full force and effect as to **Wrongful Acts** occurring prior to the effective time of the Transaction, but there shall be no coverage afforded by any provision of this Policy for any actual or alleged **Wrongful Act** occurring after the effective time of the Transaction.  This Policy may not be cancelled after the effective time of the Transaction and the entire premium for this Policy shall be deemed earned as of such time.  The **Parent Organization** shall also have the right to an offer by the **Insurer** of an Extended Reporting Period described in section II. B. of this Policy.

The **Parent Organization** shall give the **Insurer** written notice of the Transaction as soon as practicable but not later than 30 days after the effective date of the Transaction.

## D.    Subrogation

In the event of any payment under this Policy, the **Insurer** shall be subrogated to the extent of such payment to all the **Company's** and the **Insureds'** rights of recovery thereof, and the **Company** and the **Insureds** shall execute all papers required and shall do everything that may be necessary to secure such rights including the execution of such documents necessary to enable the **Insurer** to effectively bring suit in the name of the **Company** and/or the **Insureds**.  In no event, however, shall the **Insurer** exercise its rights of subrogation against an **Insured** under this Policy unless such **Insured** has been convicted of a criminal act, or been judicially determined to have committed a deliberate fraudulent act, or obtained any profit or advantage to which such **Insured** was not legally entitled.

## E.    Assignment

This Policy and any and all rights hereunder are not assignable without the written consent of the **Insurer**.

## F.    Entire Agreement

By acceptance of this Policy, the **Insureds** and the **Insurer** agree that this Policy (including the Proposal) and any written endorsements attached hereto constitute the entire agreement between the parties.

## G.    Representation by Parent Organization

It is agreed that the **Parent Organization** shall act on behalf of its **Subsidiaries** and all **Insureds** with respect to the giving of notice of **Claim** or giving and receiving any notices under section VIII. A., the payment of premiums and the receiving of any return premiums that may become due under this Policy, the receipt and acceptance of any endorsements issued to form a part of this Policy and the exercising or declining to exercise any right to an Extended Reporting Period.

In witness whereof, the **Insurer** has caused this Policy to be signed by its President and Chief Executive Officer and Secretary, but this Policy shall not be valid unless countersigned on the Declarations Page by a duly authorized representative of the **Insurer**.

**President and Chief Executive Officer**                              **Secretary**

The descriptions in the headings of this Policy are solely for convenience, and form no part of the terms and conditions of coverage.

# CAROLINA CASUALTY INSURANCE COMPANY
8381 Dix Ellis Trail, Jacksonville, Florida 32256

## POLICYHOLDER DISCLOSURE
## NOTICE OF TERRORISM INSURANCE COVERAGE

Coverage for acts of terrorism, as defined in the Terrorism Risk Insurance Act of 2002 (the "Act"), is included in your policy. You should know that, effective November 26, 2002, any losses caused by certified acts of terrorism, as defined in the Act, would be partially reimbursed by the United States under a formula established by federal law. Under this formula, the United States pays 90% of covered terrorism losses exceeding the statutorily established deductible paid by the insurance company providing the coverage. The portion of your annual premium that is attributable to coverage for acts of terrorism, as defined in the Act is: $0

Whenever printed in this Endorsement, the boldface type terms shall have the same meanings as indicated in the Policy Form.  All other provisions of the Policy remain unchanged.

| Insured | Policy Number |
|---|---|
| Specialty Piping Components, Inc. | 6331303 |
| Effective Date of This Endorsement | Authorized Representative |
| Policy Inception | |

263  (11-02) D

# Carolina Casualty Insu... e Company

8381 Dix Ellis Trail, Jacksonville, FL 32256

**Directors' and Officers' Liability Insurance**                           Declarations Page

## CLAIMS MADE WARNING FOR DECLARATION

**NOTICE: THIS POLICY PROVIDES COVERAGE ON A CLAIMS MADE BASIS SUBJECT TO ITS TERMS. THIS POLICY APPLIES ONLY TO ANY "CLAIM" (AS DEFINED IN THE POLICY) FIRST MADE AGAINST THE INSUREDS DURING THE POLICY PERIOD OR THE EXTENDED REPORTING PERIOD, IF APPLICABLE. THE LIMIT OF LIABILITY AVAILABLE TO PAY DAMAGES OR SETTLEMENTS SHALL BE REDUCED AND MAY BE EXHAUSTED BY AMOUNTS INCURRED AS "COSTS OF DEFENSE" (AS DEFINED IN THE POLICY) AND "COSTS OF DEFENSE" SHALL BE APPLIED TO THE RETENTION.**

**PLEASE READ AND REVIEW THE POLICY CAREFULLY AND DISCUSS THE COVERAGE WITH YOUR INSURANCE AGENT OR BROKER.**

Whenever printed in this Declarations Page, the boldface type shall have the same meanings as indicated in the Policy.

Policy Form: DO 21200 7/96                                           Policy Number: 1331303

Item 1.      Name and Address of **Parent Organization**:

Specialty Piping Componets, Inc.
Suite 500
550 Wescott Street
Houston, TX 77007

Person designated to receive all correspondence from the **Insurer**:
Sherri Fruge', Chief Financial Officer

Item 2.      **Policy Period:**   From March 15, 2003 (inception date) to March 15, 2008 (expiration date)
                      *(Both dates at 12:01 a.m. Standard Time at the address of the **Parent Organization**)*

Item 3.      Aggregate Limit of Liability for the **Policy Period** (inclusive of **Costs of Defense**): $5,000,000

Item 4.      Applicable Retentions:

| **Securities Claims:** | Judgments and Settlements (all coverages) | None |
|---|---|---|
| | **Costs of Defense** (Coverage A.) | $0 |
| | **Costs of Defense** (Coverage B.) | $50,000 |
| Other Claims: | Judgments, Settlements and **Costs of Defense** (Coverage A.) | $0 |
| | Judgments, Settlements and **Costs of Defense** (Coverage B. 2.) | $50,000 |

Item 5.      Premium: $154,000

Item 6.      **Continuity Dates:**      A. Coverages A. and B. 2.                 March 15, 2002

                                  B. Coverage B. 1.                        March 15, 2002

                                  C. Outside Entity Coverage:               March 15, 2002
                                       Per Outside Entity (see endorsement, if applicable)

Carolina Casualty Insurance Company
Declarations for Directors' and Officers' Liability Insurance

Item 7.     Endorsements attached:

| | |
|---|---|
| 200220 | Texas IMPORTANT NOTICE |
| 200221 | Texas Amendatory Endorsement |
| 212100 | Modification to Section II. Run-off Coverage Endorsement |
| 214322 | Addition to Section IV. Interested Party Exclusion |
| 214350 | Addition to Section IV. Professional Services Exclusion |
| 214400 | Addition to Section IV. Copyright Patent Infringement Exclusion |
| 214201 | Addition to Section IV. Nuclear Energy Liability Exclusion |
| 263 | POLICYHOLDER DISCLOSURE |
| 214331 | Addition to Section IV. Limited SEC Exclusion |
| 216015 | Addition to Section VI. Priority of Payments Endorsement |
| 215013 | Modification to Section V. Non-Stacking of Limits |
| 214310 | Addition to Section IV. Past Acts Exclusion |
| 219000 | Deletion of Endorsement |

Item 8.     Notice to the **Insurer** as provided in sections VII. A. and VII. B. and any information furnished to the **Insurer** as provided in section VI. B. shall be addressed to:
Monitor Liability Managers, Inc., Claims Department, 2850 West Golf Road, Suite 800, Rolling Meadows, IL 60008.

All other notices required to be given to the **Insurer** under this Policy shall be addressed to:
Monitor Liability Managers, Inc., 2850 West Golf Road, Suite 800, Rolling Meadows, IL 60008.

These Declarations along with the completed and signed Proposal Form and the Directors' and Officers' and Corporate Liability Insurance Policy, shall constitute the contract between the **Directors and Officers**, the **Company** and the **Insurer**.

Authorized Representative: _Robert Wolfe_          Date Issued: December 10, 2002

DO 21201 (07/96)

# CAROLINA CASUALTY INSURANCE COMPANY
8381 Dix Ellis Trail, Jacksonville, Florida 32256

## Texas
## IMPORTANT NOTICE

1.    **IMPORTANT NOTICE TO ALL POLICYHOLDERS**

In the event you need to contact someone about this Policy for any reason, please contact your agent. If you have questions or complaints, you may contact your **Insurer** at:

**CAROLINA CASUALTY INSURANCE COMPANY**
**8381 Dix Ellis Trail**
**Jacksonville, FL 32256**
**1-800-874-8053**

2.    **IMPORTANT NOTICE TO TEXAS POLICYHOLDERS**

You may call the **Insurer's** toll free number 1-800-221-8201 to obtain information or to make a complaint.

**YOU MAY CONTACT**
**THE TEXAS DEPARTMENT OF INSURANCE TO OBTAIN INFORMATION**
**ON COMPANIES, COVERAGES, RIGHTS OR COMPLAINTS AT**
**1-800-252-3439**

**YOU MAY WRITE**
**THE TEXAS DEPARTMENT OF INSURANCE**
**P.O. BOX 149104**
**AUSTIN, TX 78714-9104**
**FAX #1-512-475-1771**

3.    **PREMIUM OR CLAIM DISPUTES**

Should you have a dispute concerning your premium or about a **Claim**, you should contact the **Insurer** first. If the dispute is not resolved, you may contact the Texas Department of Insurance.

4.    **ATTACH THIS NOTICE TO YOUR POLICY OR BOND**

This notice is for information only and does not become a part or condition of the attached document.

Whenever printed in this Endorsement, the boldface type terms shall have the same meanings as indicated in the Policy Form. All other provisions of the Policy remain unchanged.

| Insured | Policy Number |
|---|---|
| Specialty Piping Components, Inc. | 1331303 |
| Effective Date of This Endorsement | Authorized Representative |
| Policy Inception | |

[21200]

200220  (07-96)

**CAROLINA CASUALTY ~~INSURANCE~~ COMPANY**
8381 Dix Ellis Trail, Jacksonville, Florida 32256

---

## Texas
## Amendatory Endorsement

Section VIII. General Conditions A. 4. is deleted in its entirety and replaced with the following:

VIII. A. 4.:   If the **Insurer** decides not to renew this Policy, the **Insurer** shall provide written notice to the **Parent Organization** at least 60 days prior to the end of the **Policy Period**. The notice shall include the reason for such non-renewal. The **Insurer** may not refuse to renew this Policy solely based on the fact that any of the **Insureds** is an elected official.

Whenever printed in this Endorsement, the boldface type terms shall have the same meanings as indicated in the Policy Form. All other provisions of the Policy remain unchanged.

| Insured | Policy Number |
|---|---|
| Specialty Piping Components, Inc. | 1331303 |
| Effective Date of This Endorsement | Authorized Representative |
| Policy Inception | |

[21200]                                                                                           200221  (07-96)

**CAROLINA CASUALTY ...... ANCE COMPANY**
8381 Dix Ellis Trail, Jacksonville, Florida 32256

# Modification to Section II.
# Run-off Coverage Endorsement

In consideration of the additional premium paid for this endorsement of $154,000, it is understood and agreed that section II. Extended Reporting Period of this Policy is deleted in its entirety and replaced with the following:

II.:     Run-off Coverage

A.     There shall be an extension of the coverage granted by this Policy with respect to any **Claim** first made during the period of 60 months, which period shall commence at 12:01 a.m. on March 15, 2003 and expire at 12:01 a.m. on March 15, 2008, but only with respect to any **Wrongful Act** occurring prior to July 31, 2002 and is otherwise covered by this Policy.

B.     The additional premium for the Run-off Coverage shall be fully earned as of July 31, 2002.  The Run-off Coverage is not cancelable.

C.     The fact that this Policy is extended by virtue of the purchase of this Run-off Coverage shall not in any way increase the Limit of Liability stated in Item 3. of the Declarations.

Whenever printed in this Endorsement, the boldface type terms shall have the same meanings as indicated in the Policy Form.  All other provisions of the Policy remain unchanged.

| Insured | Policy Number |
|---|---|
| Specialty Piping Components, Inc. | 1331303 |
| Effective Date of This Endorsement Policy Inception | Authorized Representative |

[21200]

212100  (rev. 06-02)

**CAROLINA CASUALTY INSURANCE COMPANY**

8381 Dix Ellis Trail, Jacksonville, Florida 32256

## Addition to Section IV.
## Interested Party Exclusion

In consideration of the premium paid for this Policy, it is understood and agreed that section IV. Exclusions of this Policy is amended by the addition of the following:

IV.:     brought or maintained by or on behalf of ___*___ and/or its subsidiaries and/or its affiliates and/or its directors and/or officers.

•

Bankers Trust

SPC Holdings LLC

SPC Holdings II LLC

SPC Holdings III LLC

SPC Holdings IV LLC

Whenever printed in this Endorsement, the boldface type terms shall have the same meanings as indicated in the Policy Form.  All other provisions of the Policy remain unchanged.

| Insured<br>Specialty Piping Components, Inc. | Policy Number<br>1331303 |
|---|---|
| Effective Date of This Endorsement<br>Policy Inception | Authorized Representative |

[21200]                                                                                              214322  (07-96)

**CAROLINA CASUALTY ~~INSUR~~ANCE COMPANY**
8381 Dix Ellis Trail, Jacksonville, Florida 32256

## Addition to Section IV.
## Professional Services Exclusion

In consideration of the premium paid for this Policy, it is understood and agreed that section IV. Exclusions of this Policy is amended by the addition of the following:

IV.:    based upon, arising out of, directly or indirectly resulting from or in consequence of, or in any way involving the performance of any professional services for others for a fee, and caused by any act, error or omission.

Whenever printed in this Endorsement, the boldface type terms shall have the same meanings as indicated in the Policy Form. All other provisions of the Policy remain unchanged.

| Insured | Policy Number |
|---|---|
| Specialty Piping Components, Inc. | 1331303 |
| Effective Date of This Endorsement | Authorized Representative |
| Policy Inception | |

[21200]

214350  (07-96)

**CAROLINA CASUALTY** ~~INSUR~~ANCE **COMPANY**

8381 Dix Ellis Trail, Jacksonville, Florida 32256

---

## Addition to Section IV.
## Copyright / Patent Infringement Exclusion

In consideration of the premium paid for this Policy, it is understood and agreed that section IV. Exclusions of this Policy is amended by the addition of the following:

IV.:     based upon, arising out of, directly or indirectly resulting from or in consequence of, or in any way involving any actual or alleged:

1.     plagiarism, or

2.     infringement of copyright, patent, title or slogan, or

3.     piracy or unfair competition, or

4.     idea misappropriation.

Whenever printed in this Endorsement, the boldface type terms shall have the same meanings as indicated in the Policy Form. All other provisions of the Policy remain unchanged.

| Insured | Policy Number |
|---|---|
| Specialty Piping Components, Inc. | 1331303 |
| Effective Date of This Endorsement | Authorized Representative |
| Policy Inception | |

[21200]                                                                                            214400  (07-96)

# CAROLINA CASUALTY ... ANCE COMPANY

8381 Dix Ellis Trail, Jacksonville, Florida 32256

## Addition to Section IV.
## Nuclear Energy Liability Exclusion

In consideration of the premium paid for this Policy, it is understood and agreed that section IV. Exclusions of this Policy is amended by the addition of the following:

1.    Under any Liability Coverage:

    a.    with respect to which any of the **Directors and Officers** under this Policy are also insured under a Nuclear Energy Liability Policy issued by the Nuclear Energy Liability Insurance Association, Mutual Atomic Energy Liability Underwriters or Nuclear Insurance Association of Canada, or would be insured under any such policy(ies) but for its termination upon exhaustion of its limit of liability, or

    b.    resulting from the hazardous properties of nuclear material and with respect to which:

        1.    the **Directors and Officers** and/or the **Company** are required to maintain financial protection pursuant to the Atomic Energy Act of 1954, or any law amendatory thereof, or

        2.    the **Directors and Officers** are, or had this Policy not been issued would be, entitled to indemnity from the United States of America, or any agency thereof, under any agreement entered into by the United States of America, or any agency thereof, and the **Company** and/or the **Directors and Officers** of the **Company**.

2.    Under any Medical Payments Coverage, or under any Supplementary Payments Provision relating to immediate medical or surgical relief, or expenses incurred with respect to bodily injury, sickness, disease or death resulting from the hazardous properties of nuclear material or arising out of the operation of a nuclear facility.

3.    Under any Liability Coverage, to injury, sickness, disease, death or destruction resulting from the hazardous properties of nuclear material, if:

    a.    the nuclear material:

        1.    is at any nuclear facility owned by, or operated by or on behalf of the **Company**, or

        2.    has been discharged or dispersed therefrom; or

    b.    the nuclear material, spent fuel or waste was at any time possessed, handled, used, processed, stored, transported or disposed of by or on behalf of the **Company**; or

    c.    the injury, sickness, disease, death or destruction arises out of the furnishing by the **Company** and/or the **Directors and Officers** of the **Company** of services, materials, parts or equipment in connection with the planning, construction, maintenance, operation or use of any nuclear facility.

4.    As used in this endorsement:

    a.    "Hazardous properties" include radioactive, toxic or explosive properties.

    b.    "Nuclear material" means source material, special nuclear material or byproduct material.

    c.    "Source material", "special nuclear material" and "byproduct material" have meanings given them in the Atomic Energy Act of 1954 or in any law amendatory thereof.

    d.    "Spent fuel" means any fuel element or fuel component, solid or liquid, which has been used or exposed to radiation in a nuclear reactor.

    e.    "Waste" means any waste material:

        1.    containing byproduct material (other than the tailings or wastes produced by the extraction or concentration of uranium or thorium from any ore processed primarily for its source),

        2.    resulting from the operation by any person or organization of any nuclear facility included under 1. and 2. of the definition of "nuclear facility".

    f.    "Nuclear facility" means:

Whenever printed in this Endorsement, the boldface type terms shall have the same meanings as indicated in the Policy Form. All other provisions of the Policy remain unchanged.

| Insured | Policy Number |
|---|---|
| Specialty Piping Components, Inc. | 1331303 |
| Effective Date of This Endorsement | Authorized Representative |
| Policy Inception | |

[21200]

# CAROLINA CASUALTY INSURANCE COMPANY

8381 Dix Ellis Trail, Jacksonville, Florida 32256

1. any nuclear reactor,

2. any equipment or device designed or used for:

   a. separating the isotopes of uranium or plutonium,

   b. processing or utilizing spent fuel, or

   c. handling, processing or packaging waste,

3. any equipment or device used for the processing, fabricating or alloying of special nuclear material if at any time the total amount of such material in the custody of the **Company** at the premises where such equipment or device is located consists of or contains more than 25 grams of plutonium or uranium 233 or any combination thereof, or more than 250 grams of uranium 235, or

4. any structure, basin, excavation, premises or place prepared or used for the storage or disposal of waste, and includes the site on which any of the foregoing is located, all operations conducted on such site and all premises used for such operations.

g. "Nuclear reactor" means any apparatus designed or used to sustain nuclear fission in a self-supporting chain reaction or to contain a critical mass of fissionable material.

h. "Injury" or "destruction of property" includes all forms of radioactive contamination of property.

Whenever printed in this Endorsement, the boldface type terms shall have the same meanings as indicated in the Policy Form. All other provisions of the Policy remain unchanged.

| Insured<br>Specialty Piping Components, Inc. | Policy Number<br>1331303 |
|---|---|
| Effective Date of This Endorsement<br>Policy Inception | Authorized Representative |

[21200]

214201  (07-96)

# CAROLINA CASUALTY INSURANCE COMPANY

8381 Dix Ellis Trail, Jacksonville, Florida 32256

## Addition to Section IV.
## Limited SEC Exclusion

In consideration of the premium paid for this Policy, it is understood and agreed that section IV. Exclusions of this Policy is amended by the addition of the following:

IV.:  based upon, arising out of, directly or indirectly resulting from or in consequence of, or in any way involving:

1.  the filing of a registration statement under the Securities Act of 1933, including any allegation that a prospectus, as it is declared effective, contained an untrue statement of a material fact, or omitted to state a material fact, required to be stated therein or is necessary to make the statements therein not misleading, or

2.  any liability arising under any underwriting agreement executed in connection with the public offering of securities.

Whenever printed in this Endorsement, the boldface type terms shall have the same meanings as indicated in the Policy Form. All other provisions of the Policy remain unchanged.

| Insured<br>Specialty Piping Components, Inc. | Policy Number<br>1331303 |
|---|---|
| Effective Date of This Endorsement<br>Policy Inception | Authorized Representative |

[21200]

214331 (07-96)

# CAROLINA CASUALTY INSURANCE COMPANY

8381 Dix Ellis Trail, Jacksonville, Florida 32256

## Addition to Section VI.
## Priority of Payments Endorsement

In consideration of the premium paid for this Policy, it is understood and agreed that section VI. Defense, Cooperation and Settlements of this Policy is amended by the addition of the following:

VI.:     In the event of **Loss** rising from any **Claim(s)** for which payment is due under the provisions of this Policy, then the **Insurer** shall:

    a.     first, pay such non-Indemnifiable **Loss** for which coverage is provided under Coverage A. of this Policy; and

    b.     then, with respect to whatever remaining amount of the Limit of Liability is available after payment of such non-Indemnifiable **Loss**, at the written request of the chief executive officer of the **Parent Organization**, either pay or withhold payment of such other **Loss** for which coverage is provided under this Policy.

In the event the **Insurer** withholds payment pursuant to subparagraph b. above, then the **Insurer** shall at such time and in such manner as shall be set forth in written instructions of the chief executive officer of the **Parent Organization**, remit such payment to the **Company** or directly to an individual **Director or Officer**.

Whenever printed in this Endorsement, the boldface type terms shall have the same meanings as indicated in the Policy Form. All other provisions of the Policy remain unchanged.

| Insured<br>Specialty Piping Components, Inc. | Policy Number<br>1331303 |
| --- | --- |
| Effective Date of This Endorsement<br>Policy Inception | Authorized Representative |

[21200]

216015 (03-98)

# CAROLINA CASUALTY INSURANCE COMPANY

8381 Dix Ellis Trail, Jacksonville, Florida 32256

## Modification to Section V.
## Non-Stacking of Limits

In consideration of the premium paid for this Policy, it is understood and agreed that section V. Limit of Liability and Retentions of this Policy is amended by the addition of the following:

V.:      If any **Claim** is covered under this Policy and under one or more other policies issued by the **Insurer** or any of its affiliates, then:

1.    the **Insurer** shall not be liable under this Policy for a greater proportion of the **Loss** from such **Claim** than the applicable Limit of Liability under this Policy bears to the total Limit of Liability of all such other policies; and

2.    subject to the Limit of Liability of this Policy, the maximum liability of the **Insurer** and its affiliates under this Policy and all such other policies combined shall be the amount of the highest available Limit of Liability.

Whenever printed in this Endorsement, the boldface type terms shall have the same meanings as indicated in the Policy Form. All other provisions of the Policy remain unchanged.

| Insured | Policy Number |
|---|---|
| Specialty Piping Components, Inc. | 1331303 |
| Effective Date of This Endorsement | Authorized Representative |
| Policy Inception | |

[21200]

215013 (07-96)

**CAROLINA CASUALTY INSURANCE COMPANY**
8381 Dix Ellis Trail, Jacksonville, Florida 32256

---

## Addition to Section IV.
## Past Acts Exclusion

In consideration of the premium paid for this Policy, it is understood and agreed that section IV. Exclusions of this Policy is amended by the addition of the following:

IV.:     based upon, arising out of, directly or indirectly resulting from or in consequence of, or in any way involving:

1.     any **Wrongful Act** which occurred on or before March 15, 2002, or

2.     any **Wrongful Act** occurring on or subsequent to March 15, 2002 which, together with a **Wrongful Act** occurring prior to such date, would constitute a **Related Wrongful Act**.

Whenever printed in this Endorsement, the boldface type terms shall have the same meanings as indicated in the Policy Form.  All other provisions of the Policy remain unchanged.

| Insured | Policy Number |
|---|---|
| Specialty Piping Components, Inc. | 1331303 |
| Effective Date of This Endorsement Policy Inception | Authorized Representative |

[21200]                                                                214310 (07-96)

# CAROLINA CASUALTY INSURANCE COMPANY

8381 Dix Ellis Trail, Jacksonville, Florida 32256

## Deletion of Endorsement

In consideration of the premium paid for this Policy, it is understood and agreed that endorsement number <u>214310</u> is hereby deleted in its entirety as of the effective date disclosed below.

Whenever printed in this Endorsement, the boldface type terms shall have the same meanings as indicated in the Policy Form. All other provisions of the Policy remain unchanged.

| Insured | Policy Number |
|---|---|
| Specialty Piping Components, Inc. | 1331303 |
| Effective Date of This Endorsement | Authorized Representative |
| March 15, 2003 | |

[21200]

219000 (07-96)

# Carolina Casualty Insurance Company

**Proposal Form**

8381 Dix Ellis Trail, Jacksonville, FL 32256

## Management Liability Insurance

### CLAIMS MADE WARNING FOR APPLICATION

**THIS PROPOSAL FORM IS FOR A CLAIMS MADE POLICY, RELATING TO CLAIMS MADE AGAINST THE INSUREDS DURING THE POLICY PERIOD OR EXTENDED REPORTING PERIOD, IF APPLICABLE.**

Whenever printed in this Proposal Form, the terms in boldface type shall have the same meanings as indicated in the Policy. This Proposal Form is to be completed with respect to the **entire Insured Entity**. **Insured Entity** as used herein is defined to include the Named Insured and any **Subsidiaries**.

Name of **Named Insured**

Specialty Piping Components, Inc

| Street Address | | Suite |
|---|---|---|
| 550 Westcott St., Suite 500 | | |

| City | State | Zip Code |
|---|---|---|
| Houston, TX 77007 | | |

The Officer designated as agent of the **Insured Entity** and of all **Insureds** to receive any and all notices from the Insurer or their authorized representatives concerning this insurance:

| Sherri Fruge' | Chief Financial Officer | sfruge@spcomponents.com |
|---|---|---|
| Name | Title | E-Mail Address |

## General Information (Provide details to all "Yes" answers by attachment)

1. The **Insured Entity** has been in continuous operation since: **3/31/94**
2. What is the **Insured Entity's** Federal Employer Identification Number (FEIN) or Taxpayer Identification Number: **75-2303038**
3. (a) What is the **Insured Entity's** Primary Standard Industry Code (SIC): **see attached**
   (b) Describe the **Insured Entity's** nature of operations: **manufacturer of flanges, fittings, forgings. Distributor of bar steel.**
4. Provide the following financial information with respect to the **Insured Entity**:
   Assets (000): **$ 97,601,497** Equity (000): **($23,370,590)** As of (Year End): **12/31/2001**
5. What percentage of the **Insured Entity's** revenue are generated or expected to be generated directly from the Internet over the next 18 months? **<1 %**
6. How many parents does the **Insured Entity** own or hold? **-0-**
7. (a) Within the last 3 years, has the **Insured Entity** been involved in any bankruptcy proceeding? ☐ Yes ☒ No
   (b) Within the next 12 months, is the **Insured Entity** contemplating filing a petition for protection under the bankruptcy code? ☐ Yes ☒ No
8. Which of the following professional services are offered by the **Insured Entity** for others for a fee? If "None", so state. ☐ None
   ☒ Consulting  ☐ Investment Advisor  ☐ Real Estate Agent / Broker
   ☐ Data Processing  ☒ Insurance Agent / Broker  ☐ Securities Broker / Dealer  ☐ Other:
9. Is the **Insured Entity** engaged in any of the following activities? If "None", so state. **None** ☐ None
   ☐ Captive Insurance Company operations  ☐ Insurance Company operations
   ☐ Franchising  ☐ Activities that fall under The Investment Company Act of 1940
   ☐ General Partnership operations

## Current Employee Information (Provide details to all "Yes" answers by attachment)

10. (a) Current number of **Employees**: Full Time: **685** Part Time: **10**
    (b) What is the **Insured Entity's** annual employee turnover rate for the last 12 months? **<5 %**
11. Within the last 3 years, has there been any change (resignations, departures, retirements, etc.) in the position of the Chairman of the Board, President, Chief Executive Officer or Chief Financial Officer? ☒ Yes ☐ No
12. What percentage of the **Insured Entity's Employees** currently earns more than $50,000? **<10 %**
13. Does the **Insured Entity** currently employ a full time Human Resources professional? ☒ Yes ☐ No
14. Does the **Insured Entity** (details to "Yes" or "No" answers are not required by attachment):
    (a) Utilize employment applications for all prospective **Employees**? ☒ Yes ☐ No
    (b) Require the Human Resource Department to review and approve each proposed **Employee** termination? ☒ Yes ☐ No
    (c) Have outside employment counsel review each proposed **Employee** termination? ☐ Yes ☒ No
    (d) Conduct mandatory periodic **Employee** education regarding prohibited forms of harassment? ☒ Yes ☐ No
    (e) Periodically have its employment policies and procedures reviewed by outside employment counsel? ☒ Yes ☐ No
    (f) Periodically have its employment policies and procedures distributed to all **Employees**? ☒ Yes ☐ No

ML 6500 (rev. 01-01)

Page 1 of 4

15. Within the last 12 months, has the Insured Entity implemented any collective bargaining agreements with any group of Employees?  ☐ Yes ☒ No

16. Indicate which formal written policies and procedures have been implemented and attach a copy of each. If "None", so state.  ☐ None

    ☒ Employee Handbook / Manual      ☒ Anti-Harassment Policy, including    **Employers with more than 50 Employees**
    ☒ Anti-Discrimination Policy –        Sexual Harassment             ☒ Family Medical Leave Act
        Equal Employment Opportunity    ☒ Adherence to Employment "at-     **California Employers Only**
        (EEO) Policy                 will" relationship with all Employees    ☐ California Family Rights Act

## Corporate Structure Information (Provide details to all "Yes" answers by attachment)

17. Form of organization:    ☒ Corporation      ☐ Sole Proprietorship      ☐ Joint Venture
                     ☐ Partnership        ☐ Limited Liability Corporation    ☐ Other: _____

18. Is the Insured Entity or any Subsidiary publicly held or a public reporting company under the Securities Exchange Act of 1934?  ☐ Yes ☒ No

19. Provide the following information regarding the Insured Entity's outstanding common stock:
    (a) Total number of shares of common stock outstanding:            1,499,322
    (b) Total number of common stock shareholders:                 one
    (c) Number of shares of common stock owned directly and/or beneficially by the Directors and Officers:    none

20. (a) Does any shareholder own, or have the right to own, directly and/or beneficially 25 percent or more of the Insured Entity's outstanding common stock?  ☒ Yes ☐ No
    (b) If "Yes", do such shareholders have representation on the Insured Entity's board of directors?  ☒ Yes ☐ No

21. Within the last 18 months, has the Insured Entity been involved in, or is it presently considering any sale of its stock (in excess of 10 percent of the total stock outstanding), merger, consolidation, acquisition, tender offer, private placement, or divestment? If "Yes",  ☒ Yes ☐ No
    i) Is this with respect to a Registration Statement for a public offering of securities within the next 12 months?  ☐ Yes ☒ No
        If "Yes", attach the prospectus including all amendments thereto.
    ii) Is this with respect to funds being generated by venture capital or private placement funding?  ☐ Yes ☐ No
    iii) If other than i) and ii) above, provide details:

22. (a) Within the last 18 months, has the Insured Entity had any Subsidiary, plant, facility, branch or office closings, consolidations or layoffs?  ☒ Yes ☐ No
    (b) Within the next 24 months, does the Insured Entity anticipate any Subsidiary, plant, facility, branch or office closings, consolidations or layoffs?  ☐ Yes ☒ No

## Litigation and Claim Information (Provide details to all "Yes" answers by attachment)

23. During the last 5 years, has the Insured Entity or any of its Directors and Officers received any written demands for monetary or non-monetary relief, been involved in, or had any knowledge of any civil or criminal action, administrative or arbitration proceeding, including both domestic or foreign equivalents, involving:
    (a) any intellectual property dispute, including Copyright, Patent, or Trademark Laws?  ☐ Yes ☒ No
    (b) any alleged violation of any Federal or State Security Law or Regulation?  ☐ Yes ☒ No
    (c) any alleged violation of any Federal or State Anti-Trust or Fair Trade Law?  ☐ Yes ☒ No
    (d) any other allegations of violation of federal, state or local statute, regulation, ordinance or common law that would otherwise be within the scope of this proposed insurance?  ☒ Yes ☐ No

24. During the last 5 years, has the Insured Entity or any of its Directors and Officers or Employees known of, or been involved in any lawsuit, charges, inquiries, investigations, grievances or other administrative hearings or proceedings before any of the following agencies and/or in any of the following forums, including both domestic or foreign equivalents?
    (a) National Labor Relations Board?  ☐ Yes ☒ No
    (b) Equal Employment Opportunity Commission?  ☒ Yes ☐ No
    (c) Office of Federal Contract Compliance Programs?  ☐ Yes ☒ No
    (d) U.S. Department of Labor?  ☐ Yes ☒ No
    (e) Any state or local government agency such as the Labor Department or fair employment agency?  ☐ Yes ☒ No
    (f) U.S. District or state court?  ☐ Yes ☒ No

25. During the last 5 years, has any current or former Employee or third party made any Claim, or otherwise alleged discrimination, harassment, wrongful discharge and/or Wrongful Employment Acts against the Insured Entity or its Directors and Officers or Employee?    ☒ Yes ☐ No
A Claim is not limited to the filing of a lawsuit or complaint with the Equal Employment Opportunity Commission or similar state or local agency. A Claim may also include a written demand or threat by any current or former Employee seeking relief in connection with an employment-related dispute or grievance.

26. Is the Insured Entity, any of its Directors and Officers or its management aware of any fact, circumstance or situation involving any Insureds that he or she has reason to believe might result in a Claim, including, but not limited to, situations involving:
  (a) Threats by any current or former employee or third party to take legal or other action against the Insured Entity or any of its employees, or a demand or request by any current or former employee for monetary or non-monetary relief, arising out of any alleged discrimination, harassment, wrongful termination, constructive discharge, or other Wrongful Employment Acts?    ☐ Yes ☒ No
  (b) Knowledge that any current or former employee is engaging in, or has engaged in, acts of discrimination, harassment, or other Wrongful Employment Acts?    ☐ Yes ☒ No
  (c) Complaints or accusations by other employees or third parties that a current or former employee is engaging in, or has engaged in, acts of discrimination, harassment, or other Wrongful Employment Acts?    ☐ Yes ☒ No
  (d) Warnings, reprimands, or other disciplinary measures taken against any current or former employee for acts of discrimination, harassment, or other Wrongful Employment Acts?    ☐ Yes ☒ No

27. Are the undersigned, or any of the Directors and Officers proposed for this insurance, aware of any fact, circumstance or situation involving any Insureds that he or she has reason to believe might result in a Claim?    ☐ Yes ☒ No

IF "YES" TO ANY PART OF QUESTIONS 23., 24., 25., 26., OR 27., PROVIDE FULL DETAILS FOR EACH ALLEGATION, EVEN IF THE MATTER HAS SINCE BEEN SETTLED OR OTHERWISE RESOLVED, BY PROVIDING THE FOLLOWING INFORMATION FOR EACH ALLEGATION BY ATTACHMENT:

| (a) Allegation | (b) Date Claim first made | (c) Paid damages/expenses including attorneys' fees | (d) Outstanding damages/expenses including attorneys' fees | (e) Total costs incurred |
|---|---|---|---|---|

IT IS UNDERSTOOD AND AGREED THAT THE INSURER SHALL NOT BE LIABLE TO MAKE ANY PAYMENT FOR LOSS IN CONNECTION WITH ANY CLAIM MADE AGAINST ANY INSURED BASED UPON, ARISING OUT OF, DIRECTLY OR INDIRECTLY RESULTING FROM OR IN CONSEQUENCE OF, OR IN ANY WAY INVOLVING ANY LAWSUIT, ADMINISTRATIVE PROCEEDING, WRITTEN DEMAND, FACT, CIRCUMSTANCE, OR SITUATION SET FORTH OR THAT SHOULD HAVE BEEN SET FORTH IN THE INSURED'S RESPONSE TO QUESTIONS 23., 24., 25., 26., OR 27.

## Documents Required

28. Provide details to all "Yes" answers, when applicable, by attachment
29. Annual Report, including audited financial statements for the last 2 years
30. Provide the following information on all Subsidiaries of the Insured Entity. If "None", so state.  see attached    ☐ None
  (a) Name    (c) Percent of ownership    (d) Nature of business
  (b) Date of acquisition/creation    (If less than 100 percent,    (e) Domestic or foreign
        list minority owners)
31. Provide the following information on all plants, facilities, branches or offices of the Insured Entity. If "None", so state.  see attached    ☐ None
  (a) Location    (b) Nature of business    (c) Estimated number of Employees

IT IS UNDERSTOOD AND AGREED THAT COVERAGE IS NOT PROVIDED FOR SUBSIDIARIES IN QUESTION 30. UNLESS THE INFORMATION REQUESTED ABOVE IS PROVIDED BY ATTACHMENT. ALSO, PROVIDE DETAILS TO QUESTION 31. BY ATTACHMENT, AS APPROPRIATE.

## Previous Insurance Information (Provide details to all "Yes" answers by attachment)

32. Provide the following information regarding the Insured Entity's most recent insurance policies. If "None", so state.    ☐ None

| Insurance Carrier | Expiration Date | Limit of Liability | Deductible | Premium |
|---|---|---|---|---|

33. Has the Extended Reporting Period (or Discovery Period) been exercised for the Named Insured's most recent Directors' and Officers' Liability Policy or Employment Practices Liability Policy?    ☒ Yes ☐ No

ML 6500 (rev. 01-01)    Page 3 of 4

## Please Read Carefully

The undersigned, acting on behalf of all Insureds, declare that the statements set forth herein are true and correct and that thorough efforts have been made to obtain sufficient information from each and every Insured proposed for this insurance to facilitate the proper and accurate completion of this Proposal Form.

The undersigned agree that the particulars and statements contained in the Proposal Form and any material submitted herewith are their representation and that they are material and are the basis of the insurance contract. The undersigned further agree that the Proposal Form and any material submitted herewith shall be considered attached to and a part of the Policy. Any material submitted with the Proposal Form shall be maintained on file (either electronically or paper) with the Insurer and shall be deemed to be attached hereto as if physically attached.

It is further agreed that:

- if any significant change in the condition of the applicant is discovered between the date of this Proposal Form and the Policy inception date, which would render this Proposal Form inaccurate or incomplete, notice of such change will be reported in writing to the Insurer immediately;
- any Policy, if issued, will be in reliance upon the truth of such representations; provided, however, with respect to such statements and representations no knowledge or information possessed by any Insureds, except for those person or persons who executed the Proposal Form, shall be imputed to any other Insureds and further provided that if any person who executed the Proposal Form knew that such statement or representation was inaccurate or incomplete, then this Policy will be void as to all Insureds;
- this Proposal Form has been completed as respects the entire Insured Entity;
- the signing of this Proposal Form does not bind the undersigned to purchase the insurance.

| _(signature)_ | Title: President & C.O.O. |
| Chairman of the Board of Directors, President, or Chief Executive Officer | |
| Povl Jorgensen | Dated: 3/20/2002 |
| Print Name and Title | |
| _(signature)_ President | Dated: 3/20/2002 |
| Human Resources Manager (or equivalent position) | |

This Admiral Insurance Company Proposal Form, including any material submitted herewith, shall be held in strictest confidence.

### A POLICY CANNOT BE ISSUED UNLESS THE PROPOSAL FORM IS PROPERLY SIGNED AND DATED.

Please submit this Proposal Form including appropriate documentation to:
Monitor Liability Managers, Inc., 2850 West Golf Road, Suite 800, Rolling Meadows, IL 60008-4034

| | Dated: |
| Submitted by (PRODUCER) | |

| AGENT'S NAME (Print Name) | AGENT'S LICENSE NUMBER |

NOTICE TO COLORADO APPLICANTS: IT IS UNLAWFUL TO KNOWINGLY PROVIDE FALSE, INCOMPLETE, OR MISLEADING FACTS OR INFORMATION TO AN INSURANCE COMPANY FOR THE PURPOSE OF DEFRAUDING OR ATTEMPTING TO DEFRAUD THE COMPANY. PENALTIES MAY INCLUDE IMPRISONMENT, FINES, DENIAL OF INSURANCE, AND CIVIL DAMAGES. ANY INSURANCE COMPANY OR AGENT OF AN INSURANCE COMPANY WHO KNOWINGLY PROVIDES FALSE, INCOMPLETE, OR MISLEADING FACTS OR INFORMATION TO A POLICY HOLDER OR CLAIMANT FOR THE PURPOSE OF DEFRAUDING OR ATTEMPTING TO DEFRAUD THE POLICY HOLDER OR CLAIMANT WITH REGARD TO A SETTLEMENT OR AWARD PAYABLE FROM INSURANCE PROCEEDS SHALL BE REPORTED TO THE COLORADO DIVISION OF INSURANCE WITHIN THE DEPARTMENT OF REGULATORY AGENCIES.

NOTICE TO NEW YORK APPLICANTS: ANY PERSON WHO KNOWINGLY AND WITH INTENT TO DEFRAUD ANY INSURANCE COMPANY OR OTHER PERSON FILES AN APPLICATION FOR INSURANCE OR STATEMENT OF CLAIM CONTAINING ANY MATERIALLY FALSE INFORMATION, OR CONCEALS FOR THE PURPOSE OF MISLEADING, INFORMATION CONCERNING ANY FACT MATERIAL THERETO, COMMITS A FRAUDULENT INSURANCE ACT, WHICH IS A CRIME, AND SHALL ALSO BE SUBJECT TO A CIVIL PENALTY NOT TO EXCEED FIVE THOUSAND DOLLARS AND THE STATED VALUE OF THE CLAIM FOR EACH SUCH VIOLATION.

NOTICE TO NEW MEXICO, PENNSYLVANIA APPLICANTS: ANY PERSON WHO KNOWINGLY AND WITH INTENT TO DEFRAUD ANY INSURANCE COMPANY OR OTHER PERSON FILES AN APPLICATION FOR INSURANCE OR STATEMENT OF CLAIM CONTAINING ANY MATERIALLY FALSE INFORMATION, OR CONCEALS FOR THE PURPOSE OF MISLEADING, INFORMATION CONCERNING ANY FACT MATERIAL THERETO COMMITS A FRAUDULENT INSURANCE ACT, WHICH IS A CRIME AND SUBJECTS SUCH PERSON TO CRIMINAL AND CIVIL PENALTIES.

NOTICE TO APPLICANTS OF KENTUCKY: ANY PERSON WHO KNOWINGLY, AND WITH INTENT TO INJURE, DEFRAUDS OR DECEIVES AN INSURER OR OTHER PERSON FILES AN APPLICATION FOR INSURANCE OR STATEMENT OF CLAIM FOR THE PROCEEDS OR AN INSURANCE POLICY CONTAINING ANY FALSE, INCOMPLETE, OR MISLEADING INFORMATION OR CONCEALS FOR THE PURPOSE OF MISLEADING INFORMATION CONCERNING ANY FACT MATERIAL THERETO, IS GUILTY OF A CRIME AND IS SUBJECT TO CRIMINAL AND CIVIL PENALTIES.

NOTICE TO APPLICANTS OF FLORIDA, MINNESOTA, NEW JERSEY, OHIO, AND OKLAHOMA: ANY PERSON WHO KNOWINGLY, AND WITH INTENT TO INJURE, DEFRAUDS OR DECEIVES ANY INSURER OR OTHER PERSON FILES AN APPLICATION FOR INSURANCE OR STATEMENT OF CLAIM FOR THE PROCEEDS OF AN INSURANCE POLICY CONTAINING ANY FALSE, INCOMPLETE, OR MISLEADING INFORMATION OR CONCEALS FOR THE PURPOSE OF MISLEADING INFORMATION CONCERNING ANY FACT MATERIAL THERETO, IS GUILTY OF A FELONY AND IS SUBJECT TO CRIMINAL AND CIVIL PENALTIES.

NOTICE TO DISTRICT OF COLUMBIA, MAINE, MASSACHUSETTS AND VIRGINIA APPLICANTS: IT IS A CRIME TO KNOWINGLY PROVIDE FALSE, INCOMPLETE OR MISLEADING INFORMATION TO AN INSURANCE COMPANY FOR THE PURPOSE OF DEFRAUDING THE COMPANY. PENALTIES INCLUDE IMPRISONMENT, FINES AND DENIAL OF INSURANCE BENEFITS.

ML 6500 (rev. 01-01)

Page 4 of 4

```
          DATE  TIME       TO/FROM      MODE   MIN/SEC    PGS   JOB#  STATUS
    12   05/29 14:55 KING  SPALDING     EC--S   00'06"   001   225   OK
```

---

## MEMORANDUM

TO:        LISA MOXLEY
FROM:      CRAIG JOHNSON
SUBJECT:   SIC CODES FOR SPC
DATE:      05/29/98
CC:        P. THEODORE

SPC sells products that fall into the following SIC code groups:

**Bolts and Nuts**
3452504
3452412

**Closed Die Forgings**
3462511
3462513
3462515
3462517

**Open Die Forgings**
3462812
3462816

**Flanges**
3494532
3494534
3494537

**Fittings**
3494542
3494544
3494547

Specialty Piping Components, Inc.
Subsidiaries Owned

| Subsidiary | % Ownership | Nature of Business |
|---|---|---|
| Steel Industries, Inc. | 100% | Manufacturer of forgings, distributor of bar steel. |
| Texas Metal Works, Inc. | 100% | Manufacturer of flanges and forgings. |
| WFI Nuclear Products, Inc. | 100% | Inactive. |

Peter Offermann is a Director of National Auto Finance Company, Inc., a now defunct finance company. They were publicly held (NASDAQ) and financed "sub-prime" auto installment paper. With the failure of the company there was a class action suit naming all Directors.

The case is titled: In re: National Auto Finance Company, Inc. Securities Litigation. It is case #98-8767-CIV-HUCK/BROWN filed in the United States District Court Southern District of Florida. The company is represented by Alvin F. Lindsay III of Steel, Hector & Davis LLP, 200 South Biscayne Boulevard, Miami, FL 33131-2398. His phone number is (305) 577-7000. His email address is: alindsay@steelhector.com.

There have been two EEOC claims filed within the previous 6 years that were dismissed due to the following:

- Based upon the Commission's investigation, the Commission is unable to conclude that the information obtained establishes violations of the statutes. This does not certify that the respondent is in compliance with the statutes. No finding is made as to any other issues that might be construed as having been raised by this charge.

Both of the claims were filed by White males for racial discrimination.  There have been no damages related to these claims, nor further action.